# Braun's Appeal.

1. In estimating the profits of the business of a partnership, it is error to include among the expenditures such amounts as have been expended in permanent improvements to the real estate of the firm. Such improvements must be regarded as capital.

2. A member of a partnership, who was also its general manager, was to receive, under the articles of partnership, "a liberal salary, say $500, out of the gross income" for his services. In the statement of an account of said partnership's business, a sum of money expended in permanent improvements to the firm's real estate was included among the expenditures. With this item included, the account showed that the firm had made no profits from its business. The court below, holding that "gross income" in said articles meant net profits and not gross receipts, held accordingly that A. was not entitled to any salary under the agreement.

   *Held,* that the insertion in the expenditures of said account of the item for sums expended in permanent improvements to the real estate was erroneous. That as with this item omitted, there would have been a profit, A. was entitled to the salary agreed upon.

February 21, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Common Pleas of *Lycoming county*, in Equity: Of January Term, 1884, No. 12.

Bill in equity, filed by Ezra Rathmell and Thomas Rathmell, members of a firm trading as G. F. Braun & Co., against their co-partner, G. F. Braun, praying for an account of the business of said firm. An answer was filed, and the cause was referred to James S. Lewars, Esq., as examiner and master, who reported as follows:

Thomas M. Rathmell and Ezra Rathmell, the plaintiffs, entered into partnership with Gottlieb F. Braun, the defendant, on August 7, 1875, for the purpose of manufacturing and selling flour, feed, etc. Under the written terms of the co-partnership G. F. Braun was to manage the business of said firm, and receive as compensation therefor "a liberal salary, say five hundred dollars, out of the gross income." The working capital was to be $1,000, the plaintiffs and defendant each to furnish one half. Subsequently, each of the two parties contributed $300 more to the working capital. The firm's mill, formerly owned by Braun, and in which the plaintiffs had purchased a one half interest, was not in a condition to successfully carry on the business, and considerable money was expended in improving it. On April 1, 1877, the plaintiffs, having become dissatisfied with their investment, dissolved the partnership and demanded from Braun an account of its business. On May 19, 1882, this bill was filed.

As to whether Braun was entitled under the above agreement to any compensation for his services during the period of the partnership, the master reported as follows:

The words of the agreement are "the second party agrees to allow said first party a liberal salary, say five hundred dollars out of the gross income." What is the meaning of "*gross income?*" "Gross" means *whole, entire, total.* "Income" is defined as "that gain which proceeds from labor, business or property of any kind—the profits of commerce or business." Hence, "*gross income*" here means the whole or entire profit arising from this partnership. In other words, the defendant here agreed to conduct this business for a salary, conditioned upon its being profitable. This being the master's view of the agreement, the next question for decision is, "Was there a profit in this business?" The partnership began with a working capital of $1,000, which, by reason of repairs and improvements to the mill, was soon increased to $1,600. The business continued about a year and seven months, at the end of which time there remained less than $800; that is to say, the capital of $1,600, as well as any amount which may have been made in the business was reduced to about $800. Counsel for defendant urged in this behalf, that in ascertaining whether there was a profit or not the money expended for building and for personal property must not be considered. But the master thinks equity requires a different view of it. When the partnership was formed, the mill was not in a condition for making the business successful. The defendant was a practical miller, and he used this money in the repairing, improving and increasing the capacity and power of the mill. All this was done under his care and supervision. The success of the business evidently depended on what the mill was able to do. It was just as necessary that the mill should be repaired, improved and placed in good running order, as it was to buy grain for it to manufacture. This improvement and consequent expense were contemplated when the partnership was formed. The plaintiffs by reason of this put in more money than they agreed to furnish, and left the whole management of it to the defendant. The master regards the item called "building expenses" as in fact nothing more than the current expenses of the business. The master believes that these items should be taken into account in determining the question of profit. Under this view of the case, there certainly is no profit, and there being no profit, the defendant, under the agreement, is entitled to no salary.

The master, after stating a formal account between the parties, in which he credited the firm with $1,385.15 for "building expenses," reported that a balance of $736.47

remained in its hands, of 'which one half, or $368.23, was due to the plaintiffs. He therefore recommended that a decree be entered that the defendant pay the plaintiffs the said sum of $368.23, with interest thereon from April 1, 1877, to May 19, 1882.

Exceptions filed to this report were dismissed by the court and the report confirmed ; a decree was entered that the defendant pay to the plaintiffs the sum of $490.48 ; that the examiner's fee be paid by the parties in proportion to the amount of testimony taken by each ; that the master's fee shall be paid by the parties equally, and that the other costs be paid by the defendant. The defendant thereupon took this appeal, assigning as error the action of the court in dismissing his exceptions and in entering the said decree.

*J. T. Fredericks* and *H. H. Martin*, for the appellant.

*Oliver H. Reighard* (with him *Frank P. Guise*), for the appellees.

Mr. Justice PAXSON delivered the opinion of the court, March 17, 1884.

Conceding the correctness of the construction placed upon the words " gross income " by the master and the court below, we are of opinion that they erred in their application of them to the facts of this case.

The master found that the firm made no profits, and hence that there was no fund out of which the appellant's salary of $500 per year could be paid. To reach this result he has stated a debit and credit account with the "Susquehanna Mills," from which it appears the appellant is a debtor to the concern in the sum of $500.78. No fault is found with the items of this account. They are not shown to be incorrect, nor is error assigned thereto except in the matter of interest. It is the result that is complained of.

As a mere cash account it is doubtless correct. It shows the expenditures and receipts. But when we examine it to ascertain what, if any, profits were made by the firm, we cannot adopt the master's conclusions. The item of $1,385.15, "amount paid for building expenses " must be thrown out in estimating profits, for the plain reason that it was expended for betterments. It was evidently for the permanent improvement of the real estate. The master does not give the items of this expenditure, but enough appears to show its general character. In one place he refers to it as " the amount expended for building." In another place he says : " The mill was not in a condition for successfully carrying on the busi-

[Hollinger v. Devling.]

ness, and considerable money was expended in improving it." Again the improvements were for "repairing, improving and increasing the capacity and power of the mill." This is something outside of the ordinary repairs to a property of this description. The improvements were evidently of a permanent character, for the purpose of increasing the capacity of the mill. They added to the permanent value of the real estate, and must therefore be regarded as capital. The outlay was not a part of the annual current expense of carrying on the business. It was perhaps a necessary expenditure, but it was no more a part of the expenses of the business than the purchase of the mill property itself.

We are of opinion that the appellant is entitled to his salary at the rate agreed upon up to April 1, 1877. This will leave no balance in the hands of the appellant to charge interest upon. We need not therefore discuss the fifth assignment. The costs we will leave as the court below has placed them; the costs of this appeal, however, must be paid by the appellees. It will be the duty of the court below to enter a decree in accordance with this opinion, or if necessary, to send the case back to the master for that purpose.

> The decree is reversed at the costs of the appellees, and the record remitted to the court below with instructions to enter a decree in accordance with the foregoing.