Life Ins. Co. v. Galbraith.

PACIFIC MUTUAL LIFE INSURANCE CO. *v.* GALBRAITH.[*]

(*Knoxville.* September Term, 1905.)

1. **LIFE INSURANCE POLICY.** Forfeiture of, for nonpayment of premium.

Where a life insurance policy provides that it shall lapse and be void if the premiums thereon are not paid when due, it is well settled that such policy will be forfeited, if the premiums are not paid as stipulated. (*Post, pp.* 477, 478.)

Cases cited and approved: Ressler v. Life Ins. Co., 110 Tenn., 411; Thompson v. Life Ins. Co., 104 U. S., 252; Lantz v. Ins. Co., 139 Pa., 546.

2. **SAME.** Reinstatement of, after forfeiture, operates as a new contract.

Where there is a forfeiture of a life insurance policy on account of the failure to pay premiums as therein stipulated, a reinstatement thereof operates as a new contract, as if the policy was then for the first time issued. (*Post, pp.* 478-483.)

Cases cited: Bottomley v. Ins. Co., 170 Mass., 274; Ash v. Fidelity Mutual, etc. Asso., 63 S. W., 944; Teeter v. United Life Asso., 159 N. Y., 411.

Case distinguished: Mass. Benefit Life, etc., v. Robinson, 104 Ga., 256.

Case disapproved: Goodwin v. Providence Savings Assn., 97 Ia., 226.

3. **SAME.** Same. Same. Case in judgment.

The policy sued on provided that it should be void for failure of the insured to pay any premium when due and also provided

---

[*]As to incontestability of life insurance under provisions of the policy or a statute, see note to Clements v. New York Life Ins. Co. (Tenn.), 42 L. R. A., 247.

that it should be incontestable after two years from the date of issue. The insured failed to pay a premium when due, but he was subsequently reinstated upon fraudulent representations made by him. *Held*: The reinstatement operated as a new contract and the insurer was entitled to take advantage of such fraudulent representations at any time within two years thereafter.

4. **SAME.** Construction of.

A life insurance policy is to be liberally construed in favor of the assured and, if it is susceptible of two interpretations, that which will sustain the claim and cover the loss should be adopted. (*Post, pp.* 482, 483.)

Cases cited and approved: Thompson v. Phoenix, etc., Co., 136 U. S., 287; National Bank v. Ins. Co., 95 U. S., 673.

---

FROM HAWKINS.

---

Appeal in error from the Circuit Court of Hawkins County.—A. J. TYLER, Judge.

J. O. PHILLIPS, for Insurance Co.

S. F. POWELL and SUSONG & BIDDLE, for Galbraith.

---

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This suit was brought by defendant in error, as assignee, to recover on an insurance policy issued by plain-

tiff in error on the life of one Harry M. Johnson for the sum of $2,000. The policy bears date the 1st of January, 1902, and the assured died on the 14th of February, 1904.

The declaration, after setting out the issuance of the policy and the death of the assured, alleges that at the time of the death the policy was in full force and effect. To this declaration the insurance company filed three pleas. The first of these raised the general issue. The second averred that the policy was issued pursuant to a written application made by Johnson to the company, which application, by the terms of the policy, was made a part thereof, wherein he made certain representations and guaranties with regard to his occupation, habits, and health, all of which were material to the risk, and were at the same time false and fraudulent in fact.

The third plea averred that it was a part of the contract that the annual premium provided for in the policy should be paid on the 1st day of January in each year, and on failure to make prompt payment of any such premium the policy should lapse; that on January 1, 1903, this being the day on which the second annual premium was due, Johnson failed to pay the same as stipulated, and thereby the policy became lapsed and of no effect; that on January 10, 1903, Johnson, in order to procure reinstatement and revival of the policy, furnished to the plaintiff in error a certificate containing a warranty of present good health; that relying upon the truthfulness of this certificate, and without any knowl-

·edge of its falsity, the plaintiff in error accepted the premium then overdue and reinstated the policy. It is then averred that the warranty contained in this certificate was false, in this: "That the said Johnson was not at its date . . . in all 'respects in good, sound, and unimpaired condition," but, on the contrary, he was then greatly impaired in health, suffering with the disease known as "tuberculosis" or "consumption," complicated with Bright's disease, from which he died on February 14, 1904. Wherefore it was averred that, the reinstatement having been procured by this false and fraudulent statement, the plaintiff in error was not bound on the policy.

To the third plea the defendant in error filed a replication, in which it was said that it was not true that Johnson made false representations and warranties in the certificate furnished by him for the reinstatement of the policy. Again, and for additional replication, it was averred that it was expressly stipulated in the policy sued on that it should be indisputable, for any reason, .after two years from its date of issuance, and that the policy was issued January 1, 1902, and two years had ·elapsed at the date of the death of the assured, and, this being so, the defendant in error relied upon and pleaded .as a bar to the contest attempted by the plaintiff in error.

A demurrer was interposed to the second plea, the grounds of which it is unnecessary to state.

To the third replication set out above, the plaintiff in

error filed a demurrer, in which it was insisted that the "two years incontestable clause referred to therein had no application to the certificate of good health made by Johnson for the purpose of procuring a reinstatement of the policy then lapsed. . . . because it appears from the declaration and defendant's plea, to which the third replication is responsive, that the certificate of good health in question was made on January 10, 1903, and that the assured died on February 14, 1904; wherefore, it appears that the period of two years from the date of making the certificate and reinstatement of the policy had not expired at the time of the death of the assured, and defendant is not, therefore, debarred from showing fraud in the making of the certificate and contesting the policy because thereof."

The demurrer to the defendant's second plea, and also the demurrer to the plaintiff's third replication, were overruled, and thereupon, by way of replication to the second plea, the plaintiff averred in substance the same as had been replied by him to the third plea; that is, again he interposed as a bar to the contest bound to be made with regard to the alleged fraudulent statement of the assured, upon which the policy was reinstated, the two years incontestable stipulation of the policy, insisting that this period ran from the date of the policy, and not from the date of the reinstatement.

The plaintiff in error then confessing it could no further go by way of rejoinder to the second replication to the second plea, or to third replication to the third plea,

these replications were therefore taken for confessed, and the circuit judge, sitting without the aid of the jury, then proceeded to hear the cause, and upon the pleading and the evidence adduced adjudged that the defendant in error, as assignee, was entitled to recover the full face of the policy, with interest from the death of the assured, and the cost of the cause.

The case being now before us for review, it is insisted by the defendant in error that the judgment should be sustained, first, because there was in fact, as appears upon the face of the record, no lapse at the time this certificate was made by the assured on the 10th of January, 1903, or at the time he paid his annual premium on that day, and, this being so, the certificate was of no force or effect on the relations of the parties growing out of the issuance of the policy; and, second, that, conceding a lapse, the trial judge was right in his ruling that the incontestable clause was operative from the date of the policy, rather than from that of the reinstatement.

The first of these contentions is rested on the ground that, while the policy bears date 1st of January, 1902, yet it is assumed to be apparent from the record that the policy in fact was not issued until the 15th of that month and that year, and counting from this later date there was no lapse at the time the certificate was issued on which the reinstatement was based. In the face of the pleading of the defendant in error this contention cannot be maintained. In the replication to the second and third pleas, it is distinctly stated "that said policy

was issued on the 1st of January, 1903." This contention, therefore, may be dismissed without discussion of the cases cited in its support.

This leaves open for determination the real question, presented in the record, as to the soundness of the holding of the trial judge that by the stipulation in question the policy was incontestable from its date, and as the assured died more than two years from that time the company was liable, notwithstanding a lapse and the reinstatement through the false warranty of the assured within that period.

The policy was issued in consideration of an advance payment of an annual premium which might, at the option of the assured, be made in semiannual or quarterly installments, with the conditions found in the application for the policy, which by the terms of the letter was made a part thereof, that "the policy shall lapse and be void if any premium or installment thereon is not paid, as therein provided, and then all previous payments shall be forfeited to the company."

The incontestable clause, upon which turns the present controversy, is as follows: "This policy shall be indisputable after two years of its date of issue for the amount due provided the premiums are duly paid."

It is well settled that a policy is forfeited by its terms if the premium (or any note given for it) is not paid at maturity. *Thompson* v. *Life Ins. Co.*, 104 U. S., 252, 26 L. Ed., 765; *Ressler* v. *Life Insurance Company*, 110 Tenn., 411, 75 S. W., 735.

The effect of nonpayment of the premium is made
clear by the policy itself. As is said in *Lantz* v. *Insurance Co.,* 139 Pa., 546, 21 Atl., 81, 10 L. R. A., 577, 23
Am. St. Rep., 202: "It declares that, if not paid on the
days named and in the lifetime of the insured, the policy
shall cease and determine. . . . It ceases to bind
the company and to protect the assured, and this without any act or declaration on the part of the former. It
does not require a formal forfeiture. . . . As to him
(the assured) it is a dead policy. It is true that it may
be restored to life by the subsequent payment of the
premium and its acceptance by the company. This, however, is a new contract, by which the company agrees in
consideration of the premium to continue in force a policy which had previously expired; in other words, it is a
new assurance, though under the former policy."

This it seems to us, is a clear statement of the want
of relationship of the parties during the lapse of a policy like the one in question, and of the character of the
new relations which grow out of its reinstatement. While
in a state of absolute collapse, the former owner of the
policy has neither a legal nor an equitable claim on the
company. By his failure to comply with the condition
upon which it could be kept alive he has *ipso facto* forfeited all rights under the policy. As to him, it is as if
it had never been written. If any benefit is to accrue to
him therefrom, it must be revitalized, and this can only
be done with the consent of the company. When it is
done, then it becomes a new assurance—a new contract.

—as if the policy then was for the first time issued.   If this be its nature, then it must operate in the future from the date of its reinstatement, and whatever might be its original date, or howsoever long it may have run, yet it would seem, by the force of necessary logic, to follow that the incontestable clause would begin its new life with the date of the new contract.   And it would seem also to be as certainly true that if the assured obtained the reinstatement by fraud, or by false warranties material to the risk, during the period reserved for contest, the company should be allowed to protect itself against such unfair dealing.

In *Bottomley* v. *Insurance Company,* 170 Mass., 274, 49 N. E., 438, it is said that a revived policy of life insurance does not go into effect if a declaration or warranty contained in the application therefore is untrue. This statement, however, must be taken with the modification that if the policy contains a time limit, beyond which it is incontestable, when that limit is passed, then, unless fraud is within the class excepted from the operation of the clause fixing the limit, it is no longer a defense, but the policy is then affected notwithstanding the fraud.

On the exact question now being considered few authorities have been found.   However, in *Teeter* v. *United Life Association,* 159 N. Y., 411, 54 N. E., 72, a policy containing, in favor of the assured, a two-year limitation clause lapsed, and was reinstated upon a health certificate.   The death of the assured occurred more than four

years after that date. The company resisted recovery
upon the ground that the statement contained in the
certificate was false. To this the court said: "It seems
to us after an examination of the contract that the de-
fendant had two years after the reinstatement within
which to investigate the conditions of Teeter's health at
the time of the making of the reinstatement certificate,
and that after that date the policy became indisputable."
It was further said: "Turning to the facts of the case,
we find that Teeter . . . duly made out the rein-
statement certificate . . . and the defendant upon
its receipt reinstated him. Thereupon the policy here
was restored in full vigor as of that date, and by its very
terms it was to become incontestable after two years."

In *Ash* v. *Fidelity Mutual, etc., Association,* 63 S. W.,
944, decided by the court of civil appeals of Texas, the
question here presented was considered and determined.
The court said: "The clause of the policy providing
that it should be incontestable especially excepts from
its provision the agreement as to the payment of pre-
miums and nonpayment of any premium would, under
the terms of the policy, forfeit it. After the forfeiture
. . . it would be again subject to forfeiture on ac-
count of false statements made by the insured to obtain
a reinstatement. In the renewal contract deceased not
only made new statements, but also reiterated the state-
ment in the original application, and agreed that the
falsity of either . . . should render the policy null
and void." It is insisted, however, by the defendant in

error that a contrary holding is found in *Mass. Benefit Life, etc.,* v. *Robinson,* 104 Ga., 256, 30 S. E., 918, 42 L. R. A., 261. We have carefully examined the opinion in that case, and, while it is true that there are one or. two paragraphs in it which seem to bear out that view, yet, taken as a whole, we do not think that the case supports the contention of the defendants in error. In the course of the opinion it is said that "if there was a lapse of the policy . . . growing out of the failure to pay the premiums . . . and a reinstatement was necessary . . . and such reinstatement was secured by a certificate furnished by the assured in which there ·was ,a statement that he. was in good health, and such .statement was false and so material that his conduct would amount to a fraud, then the effect of the fraud would be to render his reinstatement void, and the policy would remain lapsed."

It is true in the further ·course of the opinion the court says that, while it has been held that a reinstatement makes a new contract, the old contract is looked to for the terms, conditions, and stipulations of the new. The court then adds: "The old contract in the present case being that the policy should be incontestable after two years from its date upon the payment of three annual premiums, the new contract would be governed by the same terms, and the period of incontestability would be reached three years from the date of the original policy, notwithstanding . . . a lapse and reinstatement had taken place."

115 Tenn.—31

This last statement was not necessary to the determination of the case, and, with proper deference to the learned court delivering the opinion, we think it hardly reconcilable with what had gone before. But whether or not a dictum, it seems to us the concession made in the paragraph to the effect that, upon the reinstatement, a new contract is made, repels the conclusion that the period of incontestability begins with the date of the old contract, that is, the original policy. For if, as conceded it was a new contract, while the old policy would be looked to for terms and stipulations, yet, we submit, these could only be operative from the day of the making of the new contract.

In *Goodwin* v. *Provident Saving Association,* 97 Iowa, 226, 66 N. W., 157, 32 L. R. A., 473, 59 Am. St. Rep., 411, it is said that reinstatement of a policy of insurance is not the making of a new contract, but simply the cancellation of a forfeiture, whereby the original contract is restored. For this the court cites *Lindsey* v. *Western, etc., Aid Society,* 84 Iowa, 734, 50 N. W., 29; and *French* v. *Mutual, etc., Ass'n,* 111 N. C., 391, 16 S. E., 427, 32 Am. St., Rep., 803. We have not had the opportunity of seeing the first of these cases, but an examination of the last discloses it is not authority for the proposition. In addition, we think the weight of judicial opinion is against the holding of the Iowa court as to the effect of reinstatement. For this reason, as well as because we regard the proposition as unsound, we would not be disposed to follow it.

We concede the full force of the contention that a

policy of insurance is to be liberally construed in favor of the insured. This rule is applied in many of our cases involving life, accident, and fire risks. And it is further conceded that, when words are used which may without violence be given two interpretations, that which will sustain the claim and cover the loss should be adopted. *Thompson* v. *Phoenix, etc., Co.,* 136 U. S., 287, 10 Sup. Ct., 1019, 34 L. Ed., 408; *National Bank* v. *Insurance Co.,* 95 U. S., 673, 24 L. Ed., 563.

But we see no rule for the application of this rule when it is once assumed, as we think must be done, that there is a new contract dating with the reinstatement. This being so, we think, beyond cavil, there can be no two interpretations of the incontestable clause in this policy.

It follows that the circuit judge was in error in ruling on this point. Falling into this error, he improperly excluded from consideration evidence tending to show the falsity of the statements of the assured in the health certificate furnished by him for a reinstatement, and the testimony of the witness Harris, general agent of the company, that the premium due on the policy on the 1st of January, 1903, was not paid at maturity, and thereafter the company refused to accept payment of the same until the health certificate was furnished, and that the acceptance of this premium was on the company's faith in the truth of the warranty contained therein, and without knowledge of its falsity.

The judgment of the court below is therefore reversed, and the cause remanded for a new trial.