## UNITED STATES FIRE INSURANCE COMPANY v. L. T. McDANIEL.

Western Section. June 22, 1928.

No petition for Certiorari was filed.

52

Fitzhugh & Fitzhugh, of Memphis, for plaintiff in error.
Ross & Ballew, of Savannah, for defendant in error.

OWEN, J. The United States Fire Insurance Company, (here-inafter called defendant), has appealed from a judgment rendered against it in the sum of $325 in favor of the plaintiff, L. T. Mc-Daniel upon an insurance policy in the sum of $300, issued the 31st day of May, 1926. The jury returned a verdict also for $25 as interest on the $300 policy.

The defendant, in consideration of a premium of $54, insured L. T. McDaniel against loss occasioned by rain, on the 31st day of May, 1926, between ten o'clock a. m. and four o'clock p. m., standard time. The policy stated that the plaintiff's anticipated gross income was $500 for that day and the material portion of said policy covering said one day's insurance is as follows:

"If by reason of said one-tenth (1/10) of an inch or more of rainfall, at the specific location hereinafter provided for ascertain-ing the measure thereof, or any one day hereinafter provided for, during the period of time provided for such day hereinafter under schedule, the gross income of the insured from sale of merchandise, regardless of when received, for said day does not equal or exceed the amount of the anticipated gross income provided for such day hereinafter under schedule, which amount for the purpose of this insurance is agreed to be the anticipated daily gross income, from sources named herein, of the event known as the sale of merchan-dise decoration day to be held at Pittsburg Landing (Shiloh Park), Tennessee, during such day, this company shall be liable for actual loss sustained, not exceeding the amount of the difference between the gross income from sources named herein, regardless of when received, for said day and the amount of the anticipated gross income provided for such day, nor for more than the amount of insurance provided, hereinafter under schedule, for said day."

The policy further provided that Capt. DeLong Rice, superin-tendent of Shiloh National Park, should keep the rainfall of that day and report to the company if there was any rainfall. Capt.

Rice reported that there was 14/100 of an inch of rainfall that day. The proof shows that it began to rain about ten o'clock a. m. and numerous showers fell until the middle of the afternoon on the day the insurance was in force.

The company refused to pay the insurance and the plaintiff instituted his suit on the policy. At the conclusion of all the evidence there was a motion for a directed verdict, in favor of the defendant, which was overruled. The plaintiff then moved for a directed verdict as to the $300, which was granted, but upon proper charge submitted it to the jury on the question of interest. After the verdict of the jury the defendant filed its motion for a new trial, which was overruled, perfected an appeal to this court and has assigned eight errors. These assignments of error will be grouped as follows:

The first, second, third and fifth assignments go to the question of the court not directing a verdict in favor of the defendant.

The fourth assignment complains of the court permitting plaintiff to testify that his gross profits on May 31, 1926, were $175; that this was purely speculative and therefore inadmissible.

The sixth assignment complains of the court directing a verdict for the plaintiff for $300 as there was no competent evidence to support such a verdict.

The seventh error complains of the court admitting in evidence the purported carbon copy of a letter from the plaintiff to the defendant, and the eighth assignment complains of the court giving judgment for the plaintiff for the face of the policy and interest.

May 30th is designated by law as a national holiday and it is generally known as "Decoration Day" and on this day at all national cemeteries memorial exercises are held. Should the 30th of May fall on Sunday, then the following day, or Monday, May 31st, is celebrated as memorial day, or Decoration Day. May 30th in 1926 was on Sunday. The National Cemetery at Shiloh has been celebrating Memorial Day for many years, and at this place on Decoration Day large crowds of people from various sections of Tennessee, Mississippi and Alabama, gather at this park. The plaintiff had been in the mercantile business at Pittsburg Landing on the Shiloh National Military Park near to and adjoining the National Cemetery. His store and mercantile business was the only one on the park. There was none in the National Cemetery. The plaintiff had been for a number of years increasing his stock of perishable goods for Memorial Day or the memorial celebrations. While he did a general mercantile business, his trade on Memorial Day consisted of selling ice cream, soft drinks, lemonade, fruits, sandwiches, etc., and his amount of sales depended largely on the condition of the weather. A rain on Decoration Day affects the

percentage in his sales most materially, situated as was the plaintiff. It lessens the number of people and causes them to leave the grounds much earlier than they otherwise would, and because of the rain they do not purchase the character of goods usually sold on that day, such as fruits, cold drinks, sandwiches and ice cream.

The gross profits on goods sold on Memorial Day amounted to about thirty-three and one-third and one-third per cent. On Decoration Day in 1924 the plaintiff sold $1,212.48; on the same day in 1925 he sold $1,531.65; on May 31, 1926, he sold $746.93. The plaintiff testified that on account of the rain and the crowd dispersing he became overstocked and did not make a gross profit of thirty-three and a third per cent on the sales in 1926. Plaintiff testified that he made a gross profit of $175 from the sale of $746.93. It is the defendant's contention that because the plaintiff sold more than $500 worth of goods on the day the insurance was in force it is not liable, and the construction of the policy on the question of anticipated gross income determines this loss. It is insisted by defendant that gross income means gross sales or gross receipts. On the other hand, the plaintiff insists that the first cost of the goods which were sold for $746.93 represents his principal and the income is the difference between the cost price and the sale price. That is, if he had sold $750 worth and had made a profit of thirty-three and a third per cent, he would have had a principal of $500 and his profit would have been $250; but he testified that he did not make anything like thirty-three and a third per cent on the amount of goods sold, so he had much more than $500 in principal.

Webster's Imperial Dictionary defines the word "income" to be:

"That gain which proceeds from labor, business or property of any kind; the produce of a farm; the rent of houses; the proceeds of professional business; the profits of commerce, or of occupation."

This edition of the dictionary also refers, under the word "income" to "income taxes" as: "A tax laid upon a person's profits, or income over and above a specified sum." Also 4 Words and Phrases, 3501; Appeal of Braun, 105 Pa., 414, 415; Thirn v. Debreteuil, 83 N. Y. Supp., 849, 856, 86 App. Div., 405.

That which is earned, remaining itself intact. The word "income" primarily means the profits arising from an invested fund from a business or profession. 4 Words & Phrases, p. 3505; State v. McCarty (Ind.), 1 Ind., 205, 219.

As contradistinguished from profits, it is said that: "A fund resulting from the sales of materials, manufactured iron, products from land or general personal property of a corporation can in no sense be called income." 4 Words and Phrases, 3050; Gehr v. Mont. Alto Iron Co., 34 Atl., 638, 639; 174 Pa., 430. In Rawle's 3rd Revision of Bouvier's Law Dictionary, p. 1527, the word "in-

come" is defined to be: "The gain which proceeds from property, labor or business.". The word is synonymous with "profits," the gain as between receipts and payments.

The author of Corpus Juris not only gives the definition of income, but distinguishes it according to the place used, and he defines the word to be: " 'Income' is a broad, comprehensive, flexible, inclusive and generic term, capable of definition. Although it has a well-defined meaning, not only in common speech, but also under judicial construction, there appears to be some difficulty about its precise and scientific definition. It may not have exactly the same meaning in different instruments; its definition may cover a variety of specific meanings. The meaning of the term is not to be found in its bare etymological derivation; it is rather to be gathered from the implicit assumptions of its use in common speech. Its specific meaning in a particular case is governed by the intent of the parties as deduced from the context, the subject-matter of the contract, and the character of the persons contracting." 31 C. J., p. 397.

"Whatever difficulty there may be about a precise and scientific definition of 'income' it imports something entirely distinct from the principal of the source of its derivation; and it is used in common parlance and in law in contradistinction to 'capital,' 'capital assets,' 'corpus,' 'invested capital,' 'investment' and 'property.' " 31 C. J., 398, 399.

"Viewed from the source of its derivation, the word 'income' may be defined to be that gain or profit which arises, is derived, is gained or proceeds from business, capital, commerce, investments of capital, labor, lands, occupations, professions, property of any kind or the like." 31 C. J., 398, 399.

In Roberts v. Frank Carrithers (Ky.), 202 S. W., 659, it is said: "Income is a term of considerable flexibility, and its meaning in any particular instance, like many other words of our language, must be determined from the context. Its popular signification is the return in money which one receives from an investment of capital as distinguished from the capital itself, but it may be properly applied in defining the proceeds of labor or the receipts of a profession, business or occupation."

The rule is, in insurance policies, that when words are used which may without violence be given two interpretations, that which will sustain the claim and cover the loss should be adopted. Life Ins. Co. v. Galbraith, 115 Tenn., 471, at 483.

In Thompson v. Phenix Insurance Co., 136 Tenn., 286, (34 L. Ed., 408), the fifth head of the syllabus states the rule as follows: "If a policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured."

The court, after having stated the rule, then says: "This rule is recognized in all the authorities as a just one, because those instruments are drawn by the company. First National Bank v. Hartford Fire Insurance Co., 95 U. S., 673 at 678." (24 L. Ed. 563 at 565).

"It is a fundamental rule of the law of insurance that the policy shall be construed most strongly against the insurer and liberally in favor of the insured. 1 Joyce on Ins., Sec. 222. In construing a condition or stipulation in a policy doubtful and ambiguous provisions or those in favor of the insurer, must be taken most strongly against the company." Insurance Co. v. Dobbins, 114 Tenn., 228 at 233, citing cases in support.

"Where an insurance contract is so drawn as to be manifestly ambiguous, so that reasonable and intelligent men on reading it would honestly differ as to its meaning, the difference should be resolved against the company, because it prepared and executed the agreement, and is responsible for the language used and the uncertainty thereto created." Insurance Co. v. Dobbins, supra, citing many cases in support.

"Where the terms of a policy are susceptible without violence of two interpretations that construction which is most favorable to the insured, in order to indemnify him against loss sustained, should be adopted." Insurance Co. v. Dobbins, supra, p. 233.

The person insured, the one to be indemnified is the party to be considered, and the construction of the policy should be in such manner as not to defeat the intentions of the insured, as understood by him. For, as said by the Court of Civil Appeals, in a case affirmed by the Supreme Court, on this identical question of the intention of a policy as understood by the one to be indemnified: "For instance, the court detest the literalism of such provisions (speaking of the terms of the policy) and will construe them liberally, to the end that the object of their insertion in contracts of insurance be attained, and at the same time not defeat the intention of the parties as understood by the one to be indemnified." Insurance Co. v. Hawes, 42 L. R. A. (N. S.), and note; Life & Accident Co. v. Bradley, 6 Higgins, 566 at 569.

We are of opinion that the $746.93 received by the plaintiff on the day the policy of insurance was in force was gross sales and not gross income and that the defendant did not mean gross sales when it wrote in the policy the words "gross income." If a merchant at the time he takes stock has $5000 worth of goods, and during the year he buys $10,000 additional and adds to his stock he then has a capital of $15,000. If he sells $15,000 worth of goods at a profit of twenty-five per cent, this would have cost him $12,000 and he would have had a gross income of $3000. From this gross income would be deducted the cost of operating his

business, and from the gross income, expenses being deducted he would have a net profit, unless the cost of expenses of operation would be more than the $3000 gross income.

We are of opinion that there is evidence to sustain the contention of the plaintiff that the policy in controversy cover the gross income and not the gross sales; and if the gross income did not amount to $500, and plaintiff was entitled to recover the face of the policy, there was no error in refusing to direct a verdict for the defendant, and we find material evidence to sustain the plaintiff's contention as to a proper construction of the policy and it was not error for the court to tell the jury that plaintiff was entitled to recover $300 on the policy sued on.

Assignments Nos. 4 and 7 in regard to the testimony of the plaintiff are not well taken and they are overruled.

It results that we find no error in the judgment of the lower court. All of the assignments are overruled and disallowed and the judgment of the lower court is affirmed. The plaintiff will recover of the defendant the amount of the judgment rendered in the lower court, with interest thereon from the date of its rendition, and all the costs of the cause. Execution will issue against the defendant and the sureties on appeal bond to the extent of $250, the amount of the bond given. Execution will issue against defendant for balance.

Heiskell and Senter, JJ., concur.