## J. A. Johnson, Appellee, v. Country Life Insurance Company, Appellant.

### Gen. No. 8,985.

604

Opinion filed April 3, 1936.

FRANK E. MAYNARD, of Rockford, for appellant.

SHULTZ & REID and HALL & DUSHER, all of Rockford, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

John A. Johnson, as assignee of Claire Peterson, widow of Alfred Peterson, deceased, who was the beneficiary under a life insurance policy issued by Country Life Insurance Company, instituted this suit to recover upon a policy written by the company upon the life of the said Alfred Peterson. The issues made by the pleadings were submitted to a jury, which returned a verdict for the plaintiff for $3,215 upon which judgment was rendered and the record is in this court for review.

It appears from the record that on the 26th day of September, 1932, appellant issued the policy which forms the basis of this suit in the amount of $3,000, and it was stipulated upon the hearing that when the policy was issued the first quarterly premium was paid but the insured failed to pay the second quarterly premium due December 26, 1932; that on January 26, 1933, decedent paid, and appellant accepted, $5.25 for 30 days' extension of the days of grace period but made no further payment until August 31, 1933; that on February 26, 1933, the policy lapsed for failure to pay the premium and so remained until on or about August 30, 1933; that on August 22, 1933, the insured made an application to appellant company for reinstatement and on August 31, 1933, paid the back premium for one year and until the expiration of the first policy year which was September 26, 1933; that the policy provided for a grace period of 31 days; that by the payment of August 31, 1933, the policy became effective to October 27, 1933; that on October 25, 1933, insured paid and appellant accepted the sum of $5.25 for an extension of 30 days' grace, which carried the policy to November 27, 1933. It further appears that on November 4, 1933, the insured died and subsequently the beneficiary assigned, for a valuable consideration, all her right, title and interest in the policy to appellee.

On behalf of appellant, Dr. Palmer testified that he made a post mortem examination of the body of the insured, found a duodenal ulcer which in his opinion had been forming for six, eight or ten months, that he had no opinion whether the insured would have some pains by which he would have known of its presence and that from the examination he made he could not tell with any degree of medical accuracy the date or time when the ulcer started.

Dr. Carlstrom testified that on September 1, 1933, he examined the insured for appellant and that he inquired of him if he was in good health and that the

insured answered in the affirmative; that the insured told him that he had not seen any doctor recently; that he, the physician, palpitated and felt the insured's stomach, taking hold of it from the anterior surface and ran his fingers and thumb down into the soft part of the abdomen, but did not elicit any pain from the insured; that he also made a urinary analysis and as his examination disclosed nothing unfavorable and as the insured appeared to be in good health and stated that he was, he recommended him to the company.

Dr. Tenney testified that eight or nine years previous to the time of the death of the insured, he had treated him and that the only time since then was on August 17, 1933, when he was called to the home of the insured and found him sitting in a chair rather pale and that he, the insured, then complained of pains in his abdomen; that he made an examination and found some gas in the intestines and concluded that he, his patient, had eaten something which disturbed the function of the gall bladder; that the condition was temporary and that he never suspected or told him that he had a stomach ulcer. Several lay witnesses testified that in the middle of the summer and in the latter part of August, 1933, the insured had stated to them that he did not feel good or that he felt weak or that he was not well. Other lay witnesses testified that they had seen the insured almost every day for years preceding his death, working in his restaurant or on his chicken farm, and that he never complained of ill health, was of a jovial disposition and always appeared to be in good health before and after the policy was reinstated. One of these witnesses was the special agent of appellant who secured the insured's application for the policy sued on and who also secured from him the application for reinstatement and this witness was, at the time of the trial, employed by appellant as its agent.

Dr. Edward Weld testified that he examined microscopically a section of the ulcer taken from the body of the insured and that it appeared to him to have all the earmarks of a chronic ulcer; that as a general rule an ulcer of that character is of long standing and that in his opinion such an ulcer would cause distress and trouble and affect the general health from one month to ten years or perhaps longer; that in the opinion of this witness, the insured was suffering from a duodenal ulcer on August 17, 1933, and that the symptoms which Dr. Tenney found on that day were caused by the presence of such an ulcer and this physician was of the opinion that the insured, on August 22, 1933, was not in good health. This witness further testified that chronic ulcer is of gradual development and that a patient suffering therefrom has periods of remission, getting better and then getting worse.

It further appears from the evidence that the application for reinstatement of the policy is dated August 22, 1933, and was signed by the insured. In addition to stating that it was such an application, it consisted of a series of questions such as the date of the insured's birth, whether married or single, his present occupation, whether he had suffered any injury or disease since the date of his last examination for insurance, whether any of his immediate relatives or household had died or were then afflicted with tuberculosis, whether he used beer, wine or intoxicants, whether he had any impairment of his sight or hearing, whether he was crippled, deformed or disabled and finally question number 11: ''Are you at this date in good health?'' To which the insured answered ''Yes.'' Following this and above the applicant's signature is the following: ''I hereby declare that all the statements and answers to the above questions are complete and true and I agree that they shall constitute an addition to and a part of the application . . . for insurance

under the above numbered policy, that they shall be subject to all the conditions and agreements contained in said application . . . and that they shall be the basis for any action taken by the company on this application.''

The evidence further discloses that the policy sued on contains the following clauses: ''Grace Period. Thirty-one days of grace without interest charges shall be allowed in the payment of any premium after the first, during which time this policy shall remain in force. Incontestability. This policy shall be incontestable after it shall have been in force, during the lifetime of the insured, for one year from date of issue, except for non-payment of premium. Reinstatement. Should this policy lapse, it may be reinstated at any time upon the insured furnishing evidence of insurability satisfactory to the company and paying all premium arrears with not exceeding six per cent (6%) interest per annum, and paying or reinstating any indebtedness which existed at the time of lapse, with interest. Entire Contract. This policy and the application therefor, a copy of which is attached hereto and made a part hereof, constitute the entire contract. In the absence of fraud, the statements made in the application shall be deemed representations and not warranties, and no such statement shall void this policy unless it is contained in the written application.''

It is first contended by counsel for appellant that the statement testified to by Dr. Carlstrom to the effect that the insured had stated to him at the time he examined him in August, 1933, upon his application for reinstatement that he, the insured, had not seen any physician recently and his further answer in the application for reinstatement that he was at that time in good health were untrue; that had the answers been otherwise, appellant would not have reinstated the policy and as they were material to the risk the policy is void. In

this connection counsel calls our attention to that portion of the court's instruction which told the jury that before a false statement would defeat a recovery, appellant was required to prove that the statements were untrue, that the insured knew them to be untrue and that he did so with intent to deceive the company.

An examination of the application for reinstatement discloses that it does not contain any question as to whether the insured had consulted any physician since the examination, when the policy was issued so, under the provisions of the policy, no oral answer which the insured may have made to the physician to any questions propounded by him and not included in the written application for reinstatement can form any basis for a claim of misrepresentation. *Joseph v. New York Life Ins. Co.*, 308 Ill. 93. The only portion of the application for reinstatement which refers to an examination by a physician is embraced in a question to be answered by a female applicant over 15 years of age, and these questions were left unanswered, as they obviously did not apply to the applicant for reinstatement of this policy. The only statement in the application for reinstatement which appellant can therefore rely upon as fraudulent and untrue is the answer of the insured to the eleventh question, wherein the applicant stated he was then in good health. The application for reinstatement also provided that all statements and answers should constitute an addition to and part of the original application for insurance and subject to all the conditions and agreements contained in said application, and the policy expressly provided that such statements were to be deemed representations and not warranties and no such statement would void the policy unless contained in the written application. In our opinion the application for reinstatement is not a contract separate and distinct from the policy itself, but by express agreement of appellant and in-

sured it constituted an addition to and a part of the original application and became subject to the conditions and agreements contained therein and that original application, together with the application for reinstatement and the policy constitute the entire contract of the parties. Under the authorities and the pleadings in the instant case, the burden was cast upon appellant to prove that the insured at the time he executed the application for reinstatement was not in good health, and that insured knew at that time he was not in good health. *Crawford v. Lincoln Life Ins. Co.*, 278 Ill. App. 576, and cases there cited.

Counsel for appellant insist that the verdict of the jury is the result of passion and prejudice and that it is manifestly against the weight of the evidence. We have set forth in this opinion substantially all the evidence found in this record. When appellant's physician examined the insured prior to the issuance of the policy, his physical condition was found acceptable to the company and when he again examined him on September 1, 1933, he made a urinary analysis, palpitated his stomach and the insured submitted to such tests as the company required and he again recommended him to the company. Less than two weeks before that date Dr. Tenney had been called, but he testified that he never suspected that the insured was suffering from anything more than a temporary abdominal distress and so far as the record discloses the insured never after that time was attended by a physician. In addition to the general verdict which was returned, a special interrogatory was, at the request of appellant, submitted to the jury. This special interrogatory was as follows: ''Do the jury find, as a matter of fact, that Alfred Peterson, now deceased, was not in good health on August 22, 1933, and that he then answered question number eleven in the personal certificate of health, Defendant's Exhibit 3, in

this case, to-wit: '11. Are you at this date in good health? Answer: Yes,' knowing the answer to be false, for the purpose of inducing the defendant Insurance Company to issue the policy sued upon?'' The jury answered this interrogatory in the negative and from a consideration of all the evidence in this record, we are unable to say that these verdicts were the result of passion or prejudice nor do we think they are manifestly against the weight of the evidence.

The trial court sustained a motion of the plaintiff below and eliminated from appellant's amended answer a portion thereof. The stricken portion alleged that the insured had made false and fraudulent statements in his original application for the policy. Appellant insisted in the lower court and contends here that when the policy lapsed on February 26, 1933, and remained lapsed until August 30, 1933, for nonpayment of premiums, that the incontestable clause was tolled for that period and that when the insured paid up his premium and the policy was reinstated that in construing the incontestable clause, the time during which the policy lapsed should not be included. In support of this contention, appellant calls our attention to *Pacific Mut. Life Ins. Co. v. Galbraith,* 115 Tenn. 471, 91 S. W. 204; *Teeter v. United Life Ins. Ass'n,* 159 N. Y. 411, and *McCormack v. Security Mut. Life Ins. Co.,* 220 N. Y. 447. In the *Galbraith* case, it was held that during the period when the policy had lapsed because of the failure of the insured to pay the premiums as provided in the policy, the former owner of the policy had no legal or equitable claim on the company; that when it was reinstated, then the policy became a new contract ''as if the policy then was for the first time issued'' and it must operate in the future from the date of its reinstatement and the incontestable clause would begin its new life from the date of the new contract. The court further held that if the as-

sured obtained the reinstatement by fraud or by false warranties material to the risk, during the period reserved for contest, that then the company should be allowed to protect itself against such unfair dealing. In *Teeter v. United Life Ass'n, supra,* a policy, containing a two-year limitation clause, lapsed and was reinstated. The death of the assured occurred more than four years after the policy was reinstated. The company resisted payment upon the ground that the statement contained in the reinstatement application was false. The court held that under the provisions of the policy the company had two years after the reinstatement within which to investigate the condition of Teeter's health at the time of the making of the reinstatement certificate and that after that time the policy became indisputable. In *McCormack v. Security Mut. Life Ins. Co., supra,* it appeared that the policy was issued in 1901, lapsed on January 11, 1911, was reinstated on or about February 23, 1911, and on January 1, 1912, the assured died. The policy contained a one-year incontestable clause. The court cited the *Teeter* case, *supra,* stating that there is authority for the proposition that a reinstated policy is to be viewed as a new contract and that it is incontestable for fraud or breach of warranty in the application for reinstatement after it has been in force as reinstated for a year. In the *McCormack* case the application for reinstatement warranted that the assured was in good health. The court of appeals approved the finding of the trial judge to the effect that the statement in the application for reinstatement that the assured was in good health was false, known by the assured to be false and was made for the purpose of deceiving the company and thereby procuring the reinstatement of the policy.

In *Monahan v. Fidelity Mut. Life Ins. Co.,* 242 Ill. 488, it appeared that the policy sued on was dated September 30, 1903, and contained a clause providing that if the policy shall have been in continuous force after

two years from its date, it should be incontestable except for nonpayment of premium. The insured died October 19, 1905. It was urged that the policy did not remain continuously in force but became forfeited by reason of the failure of the insured to pay the premium due September 30, 1904. It appeared, however, that the policy was reinstated on October 1, 1904, the premium due September 30, 1904, being paid on October 1, 1904. In overruling this contention, the court said: "We cannot accede to this proposition. While the payment was due on September 30, 1904, the company could waive payment of a premium on that day and accept the premium on the next day if it saw fit, and if it did waive the payment on the 30th day of September and accepted it on October 1, 1904, there was no forfeiture and there was no new contract made between the parties, but the old policy remained in force, and whatever provisions were found in the policy, including the incontestable clause, would control in determining the legal effect of the policy." The court then cited with approval *Lindsey v. Western Mut. Aid Society,* 84 Iowa 734; *Goodwin v. Provident Savings Life Assurance Ass'n,* 97 Iowa 226, and *Massachusetts Life Ass'n v. Robinson,* 104 Ga. 256, and commented upon the fact that the cases of *Pacific Mut. Life Ins. Co. v. Galbraith, supra,* and *Teeter v. United Life Ins. Ass'n, supra,* announce a different rule. "We are of the opinion, however," continued the court in the *Monahan* case, "that the true rule, and the one most in consonance with the decisions of this court, is announced in *Lindsay v. Mutual Aid Society, Goodwin v. Provident Savings Life Assurance Ass'n* and *Massachusetts Life Ass'n v. Robinson,* heretofore cited. We think therefore that the policy was in force continuously for two years from its date."

In a note to the case of *Gans v. Aetna Life Ins. Co.,* a New York case (214 N. Y. 326) reported in L. R. A. 1915 F 703, it is stated that the cases are not in har-

mony upon the question whether a new contract is created by the reinstatement of the original policy so that the incontestable period is computable from the date of the reinstatement or from the date of the policy and the cases of *Pacific Mut. Life Ins. Co. v. Galbraith, supra; Teeter v. United Life Ins. Ass'n, supra; Ash v. Fidelity Mut. Life Ass'n,* 26 Tex. Civ. App. 501; *Monahan v. Fidelity Mut. Life Ins. Co., supra,* and *Goodwin v. Provident Savings Life Assurance Ass'n, supra,* are all referred to.

In *Mutual Life Ins. Co. v. Lovejoy,* 201 Ala. 337, 78 So. 299, L. R. A. 1918 D 860, it appeared that the policy was issued March 2, 1912. Two years later the policy lapsed for nonpayment of premium. On March 14, 1914, the insured made application for reinstatement, was examined by a physician and paid the past due premiums with interest. The premiums were accepted, the application approved and the policy reinstated. On August 25, 1914, the insured died. The policy provided that it should be incontestable except for nonpayment of premiums provided two years shall have elapsed from its date of issue. It was contended by the company that upon being reinstated, the policy became a new contract and that the incontestable clause should read as if from the date of the reinstatement and not the date of the original policy. In declining to so hold, the court stated that their attention had been called to the case of *Pacific Mut. Life Ins. Co. v. Galbraith, supra,* which supports that view but that the authorities were in conflict and the *Galbraith* case was not in harmony with the proper rule for the construction of insurance contracts and refused to follow that case.

In *Business Men's Assur. Co. v. Scott,* 17 F. (2d) 4, it appeared that the defendant had issued an accident policy on October 30, 1920, by the provisions of which it agreed to pay the beneficiary named therein a stated sum in the event the insured lost his life as a result

of injuries caused exclusively by accidental means. Premiums were due August 1st in each year. The policy lapsed for failure to pay the premium due on August 1, 1923, but was reinstated on August 20, 1923, by the insured paying the premium and the company accepting it and this payment continued the policy in force and while the policy was in force the insured shot himself while insane, which the courts of Colorado had held was an accident within the meaning of the policy under the statutes of that State. The statute of Colorado also provided that suicide of a policyholder after the first policy year should not be a defense and the company contended that inasmuch as the insured's death occurred within one year from the reinstatement of the policy, the company was not precluded from setting up the defense of suicide as the reinstatement was not a restoration of the old policy but a new contract. The Circuit Court of Appeals, however, held otherwise, stating that they were unable to agree with such contention; that the payment of the premium after the due date did not create a new contract of insurance, but had the effect simply of restoring the old contract. "The only condition," said the court in its opinion, "was that the company would not be liable for any accident occurring between the due date of the premium and the time it was paid. The insurer was in no better position to defend than it would have been had the suicide occurred prior to the failure to pay the premium and after the lapse of the first policy year."

In *New York Life Ins. Co. v. Buchberg,* 249 Mich. 317, 228 N. W. 770, the court said: "The reinstatement of a policy is not a new contract of insurance, nor is it the issuance of a policy of insurance: but rather it is a contract by virtue of which the policy already issued, under the conditions prescribed therein, is revived or restored after its lapse."

"A reinstatement of the policy, after default in the payment of premiums, by performance of conditions specified in the policy continues in force the original policy and does not create a new one." 32 C. J. 1357. Of course the company may avoid the effect of a reinstatement by showing that it was procured by fraud or unfair means or by material false representations or warranties. 32 C. J. 1357. In *Alper v. New York Life Ins. Co.*, 41 F. (2d) 956, it was said that the incontestable clause of the restored contract is no part of the contract for the restoration of the policy and the new contract for the reinstatement of the policy is subject to be attacked for fraud.

In 37 C. J. 495, sec. 237, it is said by the author of the text on Life Insurance that under provisions of the original contract of insurance the insurer may be entitled on such conditions as are imposed therein to the restoration of the policy, which after such restoration, continues to be the contract of the parties as before and on page 496, sec. 239, the same author states that the original contract of insurance frequently specifies the term or conditions on which reinstatement may be had, invariably requiring the payment of overdue premiums and usually requiring the insured to furnish evidence of present insurability or (as stated in sec. 240 at page 498) of good or sound health at the time the reinstatement is sought. The same author on page 501, sec. 243, states that the insurer may avoid the effect of a reinstatement obtained by fraud or false warranties or material false statements in the application for reinstatement. Thus false warranties or false or fraudulent statements as to the health of the insured may be a ground for avoiding the reinstatement. "While in general," says the author on page 502, "statements in an application for reinstatement or a certificate of health furnished to procure reinstatement are regarded as warranties to

the same extent as when made in connection with an original contract of insurance, answers bearing on the health of the insured contained in an application for reinstatement have been construed as representations and not warranties where it appears that they are not necessarily to be taken as literally true notwithstanding such answers are in the form of warranties. . . . Ordinarily a statement in the application as to the health of the insured is not a warranty of absolute good health or freedom from any bodily ailment, but is construed as meaning only that the state of health is practically the same as when the policy was issued and the words 'sound' or 'good' health have been construed to mean that insured is free from any disease or illness of which he is conscious, that tends seriously or permanently to weaken or impair his constitution. . . . It is usually held that a reinstatement of the policy after default in the payment of premiums by performance of conditions specified in the policy continues in force the original policy and does not create a new one, and the reinstatement of the policy does not revive and render operative as of the date of reinstatement a provision of the original policy for nonliability in the event of insured's suicide within a specified period from the date of issue of the policy." Citing *New York Mutual Life Ins. Co. v. Lovejoy, supra.* The same author, at page 541, sec. 278, says: "The incontestable clause has been held to be applicable to representations in a certificate for reinstatement. In some jurisdictions it has been held that a reinstated policy should be viewed as a new contract and that it is incontestable for fraud or breach of warranty in the application for reinstatement after it has been in force for the stipulated period, dating from the time of reinstatement. . . . But in other jurisdictions it has been held that the reinstatement is not the making of a new contract, but the continuation of the

old, and that the period of incontestability runs from the date of the original contract, as in the case of a reinstatement after default in payment of premiums.'' In support of the last statement, the author. cites cases from Alabama, Georgia, Texas and the Illinois case of *Monahan v. Fidelity Mut. Life Ins. Co., supra.*

While it is true, as contended by counsel for appellant, the *Monahan* case turned upon the question of waiver, yet we are inclined to the opinion that our Supreme Court is committed to the doctrine announced by those cases which it there cited with approval to the effect that the reinstatement of an insurance policy is not the making of a new contract, and that when reinstated the incontestable period runs from the date it was originally written. There was therefore no error committed by the trial court in striking from appellant's amended answer those portions thereof which alleged that the insured had made false and fraudulent statements in his original application for the policy. In the instant case no new or different terms were agreed upon and no new or different policy was issued. The company continued to recognize that the original policy was the valid and existing contract between the parties. All that the company did was to cancel a forfeiture resulting from a failure of the insured to pay the premiums when due. The policy provided that it could be reinstated at any time after it lapsed upon the insured furnishing evidence of insurability satisfactory to the company and by paying all premiums in arrears with interest. When those premiums which were in arrears were paid and the insured furnished the company with evidence of insurability satisfactory to the company which consisted of a written application dated August 22, 1933, signed by the insured and witnessed by the soliciting agent of appellant, a medical report dated September 1, 1933, signed by the insured and wit-

nessed by Dr. Carlstrom and the physical examination of the insured made by Dr. Carlstrom, then the policy was reinstated as of the date it was originally written and as the incontestable period had elapsed prior to the death of the insured, the company will not be permitted to defend on the ground that false or fraudulent statements were made in the original application for insurance. Appellant, however, was not precluded by the trial court from contesting the validity of the reinstatement application and in our opinion the issues with reference to the alleged false and fraudulent statements in that application were properly submitted to the jury under proper instructions of the court.

Whether or not the insured was in good health at the time he was reinstated was a question of fact for the jury. In *Johnson v. Modern Woodmen of America*, 160 Ill. App. 37, it appeared that the by-laws provided for the suspension of a member for nonpayment of assessments and for the reinstatement of a suspended member upon payment of all arrearages, provided he was then in good health. In its opinion the court cited *Court of Honor v. Dinger*, 221 Ill. 176, and said that the term "good health" is a comparative expression and that if a person enjoys such health and strength as to justify a reasonable belief, on the part of himself and others, that he is free from organic trouble or from symptoms calculated to cause a reasonable apprehension of such derangement, and if to ordinary observers and outward appearance his health is reasonably such that he might, with ordinary safety, be insured, the requirement of good health is satisfied. In 40 A. L. R. 662, there is an annotation upon this question and a supplementary one in 100 A. L. R. 362, and it is there stated that the courts have made no distinction in respect to the meaning of the terms "good health" or "sound health" as used in connec-

tion with the reinstatement of a policy and their use with reference to the date of the policy; and that the term means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the good soundness or healthfulness of the system and that mere temporary indisposition which does not tend to weaken or undermine the constitution at the date of the policy does not render the policy void.

The annotation in 100 A. L. R. follows the report of the case of *National Life & Accident Ins. Co. v. Wicker,* 171 Okla. 241. In the course of its opinion, the Supreme Court of Oklahoma quoted from the case of *Mid-Continent Life Ins. Co. v. House,* 156 Okla. 285, where the court said: ''The phrase 'good health' as used in its common and ordinary sense by a person speaking of his own condition undoubtedly implies a state of health unimpaired by any serious malady of which the person himself is conscious. He does not mean that he has no latent disease of which he is wholly unconscious'' and ''Good health means apparent good health without any ostensible or known or felt symptoms of disorder and does not exclude the existence of latent unknown defects. . . . If by the phrase good health an insurance company desires to exclude every disease, though latent and unknown, it must do so by distinct and unmistakable language.'' In *Priest v. Kansas City Life Ins. Co.,* 116 Kan. 421, the court said: ''The policy contained the same provision that it should not take effect unless the applicant is in good health at the time of its delivery. We do not interpret this to mean that no contract of insurance results if the insured at the time he made his application suffered from an ailment of which he was not conscious and which still existed when he received the policy. Where, without misrepresentation on the part of the applicant, an insurance company after due in-

vestigation accepts the risk, and a post mortem examination reveals that the seeds of a fatal disease existed before the acceptance, the clause referred to will not avail to defeat the collection of the policy." We are not unmindful that the courts are in conflict as to whether this term, good health, when used as a condition precedent or as a warranty means actual or apparent good health. In *Sulski v. Metropolitan Life Ins. Co.*, 196 Ill. App. 76, affirmed in 274 Ill. 516, the court quoted with approval from the case of *Murphy v. Metropolitan Life Ins. Co.*, 106 Minn. 112, as follows: "The defense is based upon the express provision of the policy, that no obligation is assumed by the defendant company, unless on the date of the policy the assured is alive and in sound health. It is clear from the language of the policy, that the defendant's promise of insurance was not absolute but conditional, and that the existence of life and sound health in the insured on the date of the policy is the condition upon which the promise is made. It is the fact of the sound health of the insured which determines the liability of the defendant, not his apparent health, or his or any one's opinion or belief that he was in sound health. Therefore, if the insured was not in fact in sound health on the date of the policy, the defendant is not liable, unless it has waived the defense." *Funkhouser v. Illinois Bankers Life Ass'n*, 237 Ill. App. 95, is to the same effect. In the instant case the question, "Are you at this date in good health?" and the answer, "Yes" appear in the application for reinstatement and by the express terms of the policy the answer is a representation and not a condition precedent nor a warranty and it is therefore unnecessary for this court to determine whether the actual sound health test rule or the apparent sound health test rule is the correct one to apply in this State.

Appellant further contends that the trial court erred in refusing to submit to the jury another special interrogatory, viz.: "Do the jury find, as a matter of fact, that Alfred Peterson, now deceased, was ill and suffering from ulcer of the stomach on August 22, 1933?" If this interrogatory had been given and the jury had answered it, their answer would not have been controlling and it was therefore not error to refuse it. It is further insisted that the trial court erred in refusing to admit in evidence a written statement prepared by an insurance investigator and signed by the beneficiary. Appellant called the beneficiary as a witness. She examined the statement, identified her signature and testified that she was in bed with a nervous breakdown when the statement was signed; that the portion of the statement which said that she stated that the insured had complained of stomach aches at different times for the past two or three years was not true, and that she desired to repudiate that portion of the statement. Other matters contained in the statement were testified to by her and as the jury was fully informed of the contents of said statement, we do not think reversible error was committed by the court in refusing its admission.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*