People of the State of Illinois ex rel. Wilmette State Bank, Appellee, v. Village of Wilmette et al. Bankers Life Company and Samuel K. Markham, Appellants.

Gen. No. 39,719.

Opinion filed March 21, 1938.

MARKMAN, DONOVAN & SULLIVAN, for appellants; HENRY O. NICKEL, of Chicago, of counsel.

CONCANNON, DILLON, BOSTELMAN & SNOOK and WILLIAM T. HAPEMAN, both of Chicago, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

February 8, 1935, the People of the State of Illinois, on relation of the Wilmette State Bank, a corporation, filed a petition against the Village of Wilmette and certain of its officials and the officials of the Board of Local Improvements of the Village, praying that a writ of mandamus issue, commanding defendants to issue and deliver to the bank bonds in an amount of $28,200, and a warrant for $55, payable out of the deferred instalments of a special assessment. The Bankers Life Company, claiming that it was the owner of special assessment bonds of the par value of $886,000, payable out of the deferred instalments of the special assessment, was given leave to intervene. Afterward various pleadings were filed, motions made, and orders entered, and the cause submitted to the court upon a stipulation of facts. The court entered judgment, awarding a writ of mandamus as prayed for. The judgment specified the amounts for which each bond should be issued, the date each should bear, from which date interest was to be computed, and the instalment out of which each bond was payable; it specifically provided such bonds were to be paid out of instalments 5 to 20, both inclusive, and there was also a provision for the issuance of the voucher for $55. Neither the Village nor any of its officials joined in this appeal,

which is prosecuted solely by the defendants, the Bankers Life Company, a corporation, and Samuel K. Markman. Although the record on appeal was filed July 17, 1937, the last brief was not filed in this court until January 8, 1938.

The record discloses that on July 16, 1929, the Village of Wilmette passed an ordinance for the construction of a system of storm water sewers and for the condemnation of a parcel of private property for a pumping station site, the cost of which was to be paid by special assessment, in accordance with the provisions of the Local Improvement Act. Afterward proceedings were had which resulted in a judgment confirming the assessment for $1,606,325.16. It was payable in 20 instalments, the first instalment was $84,021.77 and the remaining 19, $79,359.64 each. Afterward the contract was let, the work done, vouchers against the first instalment and bonds against the remaining instalments were issued and delivered to the parties entitled thereto, for the payment of the work. The vouchers which were payable out of the first instalment aggregated $109,235.66, which was greatly in excess of the amount of the first instalment. $63,179.75 of these vouchers were issued and delivered to Roberts or Roberts & Co., for engineering services rendered in the making of the improvement. Vouchers for $28,255 which had been issued and delivered to Roberts were subsequently purchased by plaintiff, the Wilmette State Bank, no part of which, either principal or interest, has been paid. Special assessment bonds totalling $69,000 were issued against some of the deferred instalments and bonds totalling $70,000 were issued against the other deferred instalments, leaving a surplus in each of the instalments from 2 to 20, both inclusive, of between $9,000 and $10,000. Just when it was first learned that the amount of the assessment confirmed in the first instalment was much less

than the aggregate of the vouchers, each payable out of this instalment, does not appear, but it was about July, 1931. This matter was taken up with the Village officials and negotiations were carried on for some time as to what should be done.

The construction of the improvement was commenced about May 25, 1930, and completed and accepted by the Board of Local Improvements November 17, 1931, and about a month after the acceptance of the work by the Board it filed its certificate of final cost and completion, as required by section 84 of the Local Improvement Act in the county court of Cook county in the special assessment proceeding. Notice was thereafter given in accordance with the statute, some objections were filed which were afterward withdrawn, and the order entered by the county court finding that the work had been done in substantial compliance with the provisions of the ordinance. By this order it was found that the work had been finally completed and accepted by the Board, the cost thereof, together with the amount estimated by the Board required to be paid, the accruing interest on the bonds and vouchers issued to anticipate the collection of the assessment; that there was no excess to be abated, but that there was a deficiency of $55,423.

Before the filing of the briefs in the instant case plaintiff made a motion to dismiss the appeal on the ground that some of the parties defendant, who had been defaulted in the trial court, were not served with notice of appeal. Defendants' contention is that all parties to the record were served with notice of appeal. We have heretofore denied the motion. But counsel say their motion should be reconsidered and rely upon the case of *Lewis v. Renfro,* 291 Ill. App. 396, in which leave to appeal from the decision was denied by the Supreme Court. They also say that the Supreme

Court, in docket Nos. 24445 and 24446, dismissed appeals in those cases, "because all co-parties, including those who had been defaulted, were not served with notice of appeal." We have no official knowledge of why the appeals were dismissed by the Supreme Court.

Some 20 years ago the writer was of opinion that where the Supreme Court denied *certiorari,* (which is now similar to our leave to appeal) and the question involved was necessarily a question of law, the denial of the writ by the Supreme Court was equivalent to holding that the question of law had been decided properly by this court. *People v. Grant,* 208 Ill. App. 235. This view was wrong. *People v. Grant,* 283 Ill. 391. Counsel for plaintiff say that the rule of the Supreme Court, construed as they think it should be construed, "is to facilitate the orderly disposition of the business of the Courts and to expedite the prompt administration of justice." We think it obvious that is not the purpose of the motion made in this case. The only purpose of the motion is to prevent a review of the case by this court. Our Civil Practice Act was in the course of preparation for a number of years before it was submitted to the members of the bar throughout the State, and afterwards to the legislature. The committee which principally prepared a draft of the bill was composed of a number of practicing lawyers throughout the State, a few former and present judges and members of the faculty of the law schools of the Universities of Illinois, Chicago, Northwestern, Michigan, DePaul, Loyola, and probably others. Section 4 of the act, par. 128, ch. 110, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 104.004], provides that, "This act shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the

parties and the rule that statutes in derogation of the common law must be strictly construed shall not apply to this Act or to the rules made pursuant thereto.

"No statute hereafter enacted shall be construed to limit or affect the provisions of this Act or the rules adopted in accordance therewith, unless expressly declared to supersede or take precedence of designated provisions thereof or designated rules adopted pursuant thereto." Section 42 [Ill. Rev. Stat. 1937, ch. 110, § 166; Jones Ill. Stat. Ann. 104.042] of the act provides: "(2) No pleading shall be deemed bad in substance which shall contain such information as shall reasonably inform the opposite party of the nature of the claim or defense which he is called upon to meet.

"(3) All defects in pleadings, either in form or substance, not objected to in the trial court, shall be deemed to be waived."

Section 74 of the act [Ill. Rev. Stat. 1937, ch. 110, § 198; Jones Ill. Stat. Ann. 104.074] provides that the method of review in civil proceedings shall be by notice of appeal only, "and shall constitute a continuation of the proceeding in the court below."

The purpose of the entire act was to simplify the procedure and the prime object of the act was to enable the parties to a cause to have the merits of their controversies passed upon by the courts—the realities considered rather than that the matter be decided on mere technicalities which often justly bring the courts into disrepute. If the act is to be liberally construed according to the substantive rights of the parties, as it is expressly provided, this purpose will be nullified and the act guillotined by strict construction of rules of court adopted to aid the carrying of the act into effect—a strange commentary to construe the act liberally but the rules strictly. But under any act, strict construction of the rules is not in accordance with the decisions of our Supreme Court. In *People v. Davis,*

357 Ill. 396, the court said (p. 400): "Rules of court should be obeyed. This, however, does not imply such unswerving obedience as to preclude reasonable action thereunder where no material harm is done to any litigant or person charged with crime. We can perceive no reason why rules of court should be interpreted or construed more strictly than statutes in general. . . . Such rules are not mandatory, for in a particular case, for good cause, they may be disregarded." The court there referred to *People v. Feinberg,* 348 Ill. 549, where the court said, "The rules are the rules of the court and are binding on each of the judges, unless in a particular case, for good cause, they may be disregarded. (*People v. Smith,* 275 Ill. 210.)" And such has long been the law in this State. In *Field v. Chicago, D. & V. R. Co.,* 68 Ill. 367, the court said (369): "But if it were true the court had violated one of its rules, we would not for that reason alone reverse, unless it was apparent that injustice had been done, which does not appear in this case. *Mix Impl. v. Chandler et al.,* 44 Ill. 175." And in *Hunt v. Pronger,* 126 Ill. App. 403, this court, speaking by Mr. Presiding Justice Adams, in an opinion filed in 1906 said (p. 407): "Even when the court acts contrary to its rules, this will not be ground for reversal, unless it is apparent that injustice has been done. *Field v. Railroad Co.,* 68 Ill. 367." See also *Citizens Sec. & Inv. Co. v. Dennis,* 236 Ill. App. 307. We think Rule 34 of the Supreme Court does not specifically require that a notice of appeal be served on a defendant who has been defaulted.

In *Tuttle v. Checker Taxi Co.,* 274 Ill. App. 525, in discussing the rules of court we said (p. 528): "The extensions in the instant case complied with the authorized rules of the Supreme Court and of this court and the appeal is properly before us. If there seems to be some conflict between the statute (section 77) and these rules, we should bear in mind the statement of

Mr. Justice Holmes in *Bain Peanut Co. v. Pinson,* 282 U. S. 499–501, where he says 'The interpretation of constitutional principles must not be too literal. We must remember that the machine of government would not work if it were not allowed a little play in its joints.' '' The Civil Practice Act and the rules enacted pursuant thereto must not be construed too literally. They will not work if a little ''play in its joints is not allowed.''

Defendants, who were defaulted in the circuit court, are not, after such default, entitled to any further notice of proceedings. Rule 16, par. 2, of the circuit court of Cook county reads: ''A defendant who is in default for failure to appear is not entitled to notice.'' And in *Frow v. De La Vega,* 15 Wallace, (82 U. S. 552) is clearly stated the position of a defaulted defendant where the court said: (p. 554) ''The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing.''

Rule 34 of our Supreme Court, upon which defendants most rely, does not require that a copy of the notice of appeal be served on *all parties* to the proceeding in the trial court. The rule requires service of notice, ''upon each appellee and upon any coparty who does not appear as appellant.'' Obviously this rule ought not to be so construed as to require that notice be served on the defaulted party where he does not appear by attorney or personally. Rule 34 further provides: ''If anyone entitled to service did not appear in the court below by attorney, he may be served in the same manner as provided for service by mail upon attorneys.'' We think this means that all those parties who appear by attorneys or who appear personally, and not those who have been defaulted, are

under the rule entitled to notice of appeal. In the instant case as in all cases, the "Rule of Reason" must constantly be kept in mind. *Standard Oil Co. of N. J. v. United States,* 221 U. S. 1; *Maher v. New York C. & St. L. R. R. Co.,* 290 Ill. App. 267.

The administration of justice, in view of the decisions of our Supreme Court and of the provisions of the Civil Practice Act do not require the dismissal of this appeal.

Turning to the merits of the case: The position of plaintiff, the Wilmette State Bank, is that since the vouchers issued against the first instalment are greatly in excess of the amount of the assessment in the first instalment, and since there is an excess of assessment over the amount of the bonds issued against the remaining instalments, it has the right to surrender the $28,255 vouchers and demand in lieu thereof bonds of an equal amount payable out of the several deferred instalments.

This question must be determined by a construction of the Local Improvement Act. That act provides a plan for the making of improvements such as the one involved here, and specifies the steps that are to be taken in the making of the improvement, the paying for it by a special assessment levied on the property benefited, and by a supplemental assessment, in case there is a deficiency in the assessment, to pay for the work done. The legislature, knowing the money could not all be obtained at once, provided that in case of a special assessment to defray the cost of construction of sewers, payments might be divided into not more than 20 instalments, the first of which should be payable on the 2nd of January next after the date of the first voucher issued on account of work done, and the second instalment one year thereafter, and so on until all the instalments were paid, sec. 42, par. 743, ch. 24,

Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 76.049]. The legislature also had in mind that a contractor, in making such improvements, ordinarily would need money as the work progressed, and with this in view provided for the issuance of vouchers and bonds to the persons doing the work, title to which bonds and vouchers would pass by delivery. Section 86 of the act provides that bonds may be issued for the purpose of anticipating the collection of the second and subsequent instalments of the assessment to be paid out of the respective instalments against which the bond is issued, bearing interest at the rate of not more than 6 per cent or less than 4 per cent per annum. ''Each bond shall state on its face out of which installment it is payable, and shall state, by number or other designation, the assessment to which such installment belongs''; that the principal of such bond shall not exceed in the aggregate the amount of the deferred instalments. That section further provides that, ''if there be a surplus to the credit of any such installment which is not required for the payment of any vouchers or bonds issued against such installment, such surplus shall be applied toward the payment of any outstanding vouchers or bonds . . . issued, as the case may be, against any other installment or installments.'' By sec. 87 it is provided that bonds may be sold or paid to the contractor who does the work at not less than their par value and interest accrued to the time of delivery; and sec. 88 provides that the payment for any improvement made under the provisions of the act to be paid out of special assessments, may be made in bonds; that if the first instalment is not collected when payments fall due, vouchers may be issued therefor, payable out of the first instalment when collected, which shall bear interest at not more than 6 per cent or less than 4 per cent per annum, provided that in cities, towns and villages having a population of less

than 500,000, etc., costs shall first be paid. And by sec. 90 it is provided that no person accepting such vouchers or bonds shall have any claim or lien upon the city or village for payment except from the collections of the assessment against which vouchers or bonds are issued. Under these provisions of the act any vouchers or bonds are payable only out of the specific instalments named in the vouchers or bonds, and payments are limited to the moneys collected from the specified instalments, unless there is a surplus to the credit of any instalment which is not required for the payment of any voucher or bond issued against that instalment, when such surplus may be applied toward the payment of any outstanding vouchers or bonds issued in the particular assessment.

In the instant case the vouchers owned by the Wilmette State Bank are payable out of the first instalment of the assessment in question, and the owner cannot look to any other instalment unless and until there is a surplus collected in such other instalment. And the court was not warranted in commanding the village officials to execute bonds payable out of other instalments and deliver them to the bank in lieu of the vouchers.

The Bankers Life Company and Markman owned special assessment bonds payable out of instalments other than the first instalment. They have the right to insist that no other bonds be issued against the instalment out of which their bonds are payable. *Rothschild v. Village of Calumet Park,* 350 Ill. 330. There would be no stability in the value of special assessment bonds if, after they were purchased, other bonds might be issued against the instalments out of which the same bonds were to be paid. One contemplating the purchase of special assessment bonds ought to be able to rely on the court records to ascertain how many bonds were issued and outstanding against the respec-

tive instalments; but this right would be of little value if other bonds might later be issued payable out of the same instalment.

The judgment of the circuit court of Cook county is reversed and the cause is remanded with directions to dismiss the suit.

*Reversed and remanded with directions.*

McSurely and Matchett, JJ., concur.