Helen M. McMahon, Appellee, v. The Continental Assurance Company, Appellant.

Gen. No. 41,342.

Opinion filed December 30, 1940.

GEORGE C. BLISS, of Chicago, for appellant.

PEDEN, MELANIPHY, RYAN & ANDREAS, of Chicago, for appellee; JOHN C. MELANIPHY, GERALD RYAN and JOSEPH V. MURPHY, of Chicago, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This action was brought by plaintiff, Helen McMahon, as the beneficiary under a policy of life insurance issued by defendant, Continental Assurance Company, to James Edward McMahon. Plaintiff filed a motion to strike certain portions of defendant's amended answer, which set forth an affirmative defense. This motion was sustained, and defendant electing to stand upon its answer judgment was entered in favor of plaintiff for $5,111.15. This appeal followed.

Plaintiff's complaint alleged in substance that on February 19, 1936, defendant issued an insurance policy for $5,000 on the life of her husband, James Edward McMahon, the proceeds of such policy being payable to her as beneficiary upon the death of the insured; and that the insured having died on August 22, 1939, she was entitled to recover the $5,000 insurance and interest thereon from the date of the death of her husband.

Attached to and made part of the complaint is a copy of the insurance policy, which contains the following, among other provisions:

"GRACE—A grace of thirty-one days will be allowed in payment of any premium after the first, and during this time the insurance shall continue in force. . . .

"REINSTATEMENT—If this policy shall lapse by reason of default in premium payment it may be reinstated at any time within its term upon written application by the insured to the Company at its Home Office accompanied by evidence of insurability satisfactory to the Company and the payment of all past due premium with interest at the rate of five and one-half per cent per annum, and the payment or renewal of any indebtedness to the Company hereon, with interest. . . .

"This policy and the application therefor . . . which is hereby made a part of this contract and a copy of which is hereto attached, constitute the entire contract between the parties hereto, and it shall be incontestable after two years from its date of execution, except for nonpayment of premium. . . . Except as herein provided, the payment of a premium shall not maintain this policy in force beyond the date when the next premium is due."

Defendant's amended answer admitted all the allegations of the complaint except the allegation that plaintiff is entitled to payment of the policy according to its terms.

The answer then alleged as an affirmative defense that "on April 1, 1939, the annual premium of $59.60 was not paid to the defendant, nor was said annual premium or any portion thereof paid or tendered to the defendant within the period of grace thereafter as provided for in said contract of insurance"; that "by reason of the failure of the insured to pay said premium as provided for in said policy of insurance the said policy lapsed as of April 1, 1939"; that "on May 3, 1939, the insured, James Edward McMahon, signed an application for reinstatement of the said policy of insurance and did also sign a request for change of premium payment from an annual payment of $59.60 to a monthly payment of $5.35, said change in premium payment to take effect as of April 1, 1939"; and that "said application for reinstatement signed by the insured, James E. McMahon, is in words and figures as follows:

"CONTINENTAL ASSURANCE COMPANY

"I hereby apply for reinstatement of my Policy No. 230733 which became forfeited and void because of nonpayment of premium that was due April 1, 1939.

"I agree, as a part of this application, that my representations and answers in my application for the above mentioned policy, shall be considered as a part of this application for reinstatement, and I now reaffirm them. I further state and represent that the answers to the following questions are complete and true." These questions and answers contained in the application for reinstatement are pertinent to this proceeding: "1. (a) Are you in good health? Yes. . . . 5. What diseases, ailments, or injuries have you had since examined for the above mentioned policy? None. 6. What physicians, practitioners, or surgeons have you consulted since examined for the above mentioned policy? (Why?) No."

The answer further alleged that "defendant, relying upon the answers made by the insured in said application for reinstatement, did, on or about May 15, 1939, reinstate said policy of insurance"; that "in said application for reinstatement of said policy of insurance the insured answered 'none' to the following question: (5) What diseases, ailments, or injuries have you had since examination for the above mentioned policy?; that in said application for reinstatement of said policy the insured, James E. McMahon, answered 'no" to the following question: (6) What physicians, practitioners, or surgeons have you consulted since examined for the above mentioned policy? (Why?)'"; that "subsequent to the death of the insured, James E. McMahon, on August 22, 1939, this defendant discovered that the foregoing answers to said questions in the application for reinstatement were false and untrue, in that the insured, James E. McMahon, consulted and was examined by the following physicians between January 1, 1937, and April 1, 1939: Dr. A. N. Even, Dr. Sydney Walker, Jr., and Dr. Harry L. Huber, for diseases, ailments and injuries; that on or about January 4, 1937, the insured consulted and was examined by Dr. A. N. Even for an alleged injury to his eye; that Dr. Even found a retinal detachment and advised the insured to see his family physician for blood-count, urinalysis and blood pressure; that on to-wit: July 27, 1937, the insured consulted and was examined by Dr. Snyder Walker, Jr., who found that the insured had a hemorrhagic retinitis of the right eye, which in the opinion of Dr. Walker was not in any way related to an alleged injury to the eye and that the condition of the eye was secondary to some systemic disturbance resulting in an embolism or thrombosis of the central retinal artery; that the said James E. McMahon was advised by Dr. Sydney Walker, an eye specialist, that the condition of his eye was not in any way due to the injury he had to the

cornea of the eye a few months previous and suggested to the insured that he consult a physician for the purpose of having a complete checkup; that the said insured advised Dr. Sydney Walker that he had been to see a physician; that the insured, James E. McMahon, consulted and was examined by Dr. Harry L. Huber . . . May 11, 1937, who found that insured had a blood pressure of 180/110; that insured complained of a blurring of the vision of the right eye and gave a history of his father having died at the age of seventy-one of hypertension; that on . . . May 11, 1937, the insured did have a urinalysis made.''

The answer then averred that ''by reason of the injury and ailments that insured was examined for by physicians, together with the consultations with physicians by insured above referred to, the answers in said application for reinstatement to question 5 and 6, as aforesaid, were false, untrue and were made by insured with intent to deceive the defendant, or were material to the acceptance of the risk or hazard assumed by this defendant in reinstating the said policy of insurance; that this defendant would not have reinstated said policy of insurance had the said questions 5 and 6 above referred to, or either of them, been truthfully and completely answered; that insured died on August 22, 1939, as a result of a cerebral hemorrhage.''

As heretofore shown plaintiff's motion to strike that portion of defendant's answer which set forth its affirmative defense was allowed. By her motion to strike plaintiff admitted the allegations of fact, which constituted said affirmative defense.

The policy of insurance had become incontestable under its terms because it had been in force for a period of more than two years before it lapsed on April 1, 1939, by reason of the failure of the insured to pay the premium on that date. Thereafter the policy was reinstated on or about May 15, 1939, by

payment of the premium indebtedness by the insured and by the acceptance by the insurer of the application for reinstatement signed by the insured on May 3, 1939, evidencing his insurability as of that date. The only contract of insurance between the insured and defendant consists of the original application for the policy and the policy itself, and it is conceded that the application for reinstatement and the acceptance of same did not constitute a new contract of insurance. However, although the application for reinstatement and the acceptance of same formed no part of the policy of insurance, the provision of said policy heretofore set forth relating to its reinstatement in case of lapse for nonpayment of premium, as well as the statute (sec. 224 [i], par. 836, ch. 73, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 66.899]) pursuant to which said provision was incorporated in the policy, contemplate, in the event of the lapse of a policy for nonpayment of premium, a contract between the insurer and the insured for the reinstatement of the policy, whereby the lapsed policy is revived and restored to its former condition. So it is that defendant is not contesting or attacking the original contract of insurance but the contract for the reinstatement of the policy. It is insisted that, since the insured through the fraudulent representations in his application for reinstatement, heretofore set forth, induced the insurer to accept as true his answers to the questions contained therein as to his insurability, this admitted fraud as to his insurability rendered his reinstatement void and of no effect and left his policy in the same lapsed condition that it was on April 1, 1939.

The principal question presented for determination is whether defendant has the right by way of defense to contest the reinstatement of the policy because of the fraudulent misrepresentations of the insured in his application for reinstatement, which induced defendant to revive or restore the policy.

The rule that a false representation of fact in an application for a policy of insurance which materially affects either the acceptance of the risk or the hazard assumed, when made intentionally and knowingly, avoids a contract of insurance has repeatedly been enunciated by both the Supreme and Appellate Courts of this State. (*Western & Southern Life Ins. Co. v. Tomasun*, 358 Ill. 496; *Joseph v. New York Life Ins. Co.*, 219 Ill. App. 452; *Thompson v. State Mut. Life Assur. Co.*, 305 Ill. App. 255.)

Where a policy of insurance has been reinstated and the insurer asserts that the reinstatement is invalid because obtained by false representations in the application for such reinstatement, which materially affected the risk or the hazard assumed or were made with intent to deceive as to the insurability of the assured, the foregoing rule is, in our opinion, equally applicable. (*Hartley v. Metropolitan Life Ins. Co.*, 286 Ill. App. 605 (Abst.); *Johnson v. Country Life Ins. Co.*, 284 Ill. App. 603; *New York Life Ins. Co. v. Feicht*, 29 F. (2d) 318; *Alper v. New York Life Ins. Co.*, 41 F. (2d) 956.)

In support of plaintiff's position that, regardless of the false representations made by the insured in his application for reinstatement and regardless of whether such representations were material to the risk and the hazard assumed and made with intent to deceive, she is entitled to recover the proceeds of the policy because it had become irrevocable prior to its lapse on April 1, 1939, and the forfeiture for the failure to pay the premium due on that date had been waived by the reinstatement of said policy, she relies upon *Monahan v. Fidelity Mut. Life Ins. Co.*, 242 Ill. 488; *Froehler v. North American Life Ins. Co. of Chicago*, 374 Ill. 17; *Murphy v. Old Colony Life Ins. Co.*, 219 Ill. App. 649 (Abst.); *Fendi v. Metropolitan Life Ins. Co.*, 294 Ill. App. 606 (Abst.).

Plaintiff has misconstrued the effect of the decision in the *Monahan* case. There the insurer was attempt-

ing to contest the policy because of alleged misrepresentations in the application for the policy itself. There was a provision in the policy in that case making it incontestable after it had remained in force continuously for two years from its date. The insurer contended that the policy did not remain in force continuously for two years before it was contested for the reason that during that period the policy lapsed for nonpayment of premium and was thereafter reinstated. In that case the court quoted from *Lindsey v. Western Mut. Aid Society,* 84 Iowa 734, as follows: "The reinstatement was not the making of a new contract for no new or different terms were agreed upon. It was simply a cancellation of the forfeiture, whereby Mrs. Wilson was restored to membership under the contract already existing. No new or different certificate was issued, but defendant continued to recognize the certificate sued upon as the valid and existing contract with the insured." It was then held in the *Monahan* case that the policy was in force continuously for two years from the date of its issuance and that "this conclusion renders the policy incontestable." No point was made by the insurer therein with reference to any alleged false representations in the application for reinstatement of the policy. Obviously where no false representations were made in the application for reinstatement, the acceptance of the application and of the premium by the insurer revived or restored the lapsed policy. The question was not involved in that case of the right of the insurer to contest the application for reinstatement of the policy for false and fraudulent misrepresentations in the application for reinstatement. There the reinstatement of the policy was properly effected and not brought about by fraudulent representations on the part of the insured as alleged in this case.

The case of *Froehler v. North American Life Ins. Co. of Chicago,* 374 Ill. 17, is clearly distinguishable.

In her brief plaintiff quotes from p. 23 of the *Froehler* case as follows:

"In the case which we are now considering the insured had a contractual right to be reinstated and this provision of his policy was as valid and binding as any other provision therein. Under such a policy as this one the lapse for nonpayment of premiums does not make necessary the formation of a new contract, but the reinstatement, when effected, merely cancels the forfeiture, leaving the original contract in full force. (*Monahan v. Fidelity Mutual Life Ins. Co.*, 242 Ill. 488; 4 Cooley on Insurance, (2d. ed.) p. 3800.) The truth or falsity of the statements as to health are to be determined as of the date the certificate is made. (*Insurance Co. v. Higginbotham*, 95 U. S. 380.) A recital in the certificate for reinstatement that the insured is in good health cannot be construed to mean that he has had no temporary or trivial indisposition. 4 Cooley on Insurance (2d ed.) p. 3794."

In that case in the application for reinstatement of a lapsed policy, the insured answered in the affirmative a question as to whether or not he was then in good health. In its opinion the court points out that a person might be seriously ill from many causes and not know it for a long time; and that the evidence in the case tended to show that at the time the insured signed the application for reinstatement he had no information nor any reason to suspect the serious nature of his malady. The issue therein was whether the insured acted in good faith when he stated in his application for reinstatement that he was in good health. No issue was involved in that case as to false representations in the application for reinstatement except the question as to whether the insured had in good faith answered the question with reference to the condition of his health at the time he signed the application. The *Froehler* case distinguished the

*Western & Southern Life Ins. Co. v. Tomasun, supra,*
because that case involved intentional fraud. The in-
stant case involves intentional fraud in the applica-
tion for reinstatement. The language used by the
Supreme Court in the *Froehler* case is in harmony with
the conclusion reached in the *Monahan* case to the
effect that where a reinstatement is properly effected,
the forfeiture for nonpayment of premium is can-
celed and the policy revived or restored, leaving the
original contract of insurance in full force and effect.
The *Froehler* case does not hold that, if the insured
was not in good health at the time he signed the appli-
cation for reinstatement and knew that he was not in
good health and fraudulently stated in his application
that he was in good health, nevertheless he would be
entitled to recover. It is further held in the *Froehler*
case that the insured furnished all the evidence as to
his insurability that he had been asked to furnish and
that that evidence was satisfactory; that the jury
found that it was honestly given and that the question
involved was for the jury to pass upon; that the in-
sured honestly and in good faith complied with the
terms of his contract by furnishing all the evidence of
insurability required by the company. Here it is ad-
mitted by plaintiff's motion to strike that the insured
did not honestly or in good faith comply with the terms
of the contract of reinstatement in furnishing evidence
of insurability required by defendant.

Plaintiff quotes the following portion of the opin-
ion in *Murphy v. Old Colony Life Ins. Co.*, 219 Ill. App.
649 (Abst.) :

"The rule followed in *Monahan v. Fidelity Life Ins.
Co.*, 242 Ill. 488, is that a reinstatement is merely a
cancellation of the forfeiture and that the original
policy continues in full force without interruption. In
that case while the death of the insured was less than
two years after the reinstatement of the policy it was

more than two years after its issuance, and the policy was accordingly held incontestable. Reviewing conflicting authorities on the subject the court declined to follow the rule announced in the *Teeter* and other cases relied on by appellant, and adopted the rule of other cases referred to therein to the effect that the contract to which the limitation is applicable is that of the original application and policy, and not the reinstated one. This is in consonance with the statute which makes the policy and application therefor the entire contract between the parties. While fraud was not the defense in the *Monahan* case, what was said of the contract and contestability is applicable to the facts here and justified the court below in striking the affidavit on the ground that misrepresentation in the application for reinstatement is no part of the contract between the parties which by the terms of the statute as well as the policy is made 'incontestable after two years from its date,' except for specified grounds not involved here and that do not include fraud. We need not, therefore, discuss authorities of other jurisdictions.

"Furthermore, as the statute puts no restrictions upon the company's determination of what it shall deem statutory evidence of insurability at the time of reinstatement, the company would hardly seem to be in a position to question the waiver of forfeiture so long as it chose to accept as satisfactory the mere statement of the insured with regard to his health without taking other precautions such as are usually observed with regard to insurability before issuing a policy. However, it is unnecessary to decide this question if the insurer is precluded from making any defense after the lapse of two years from issuance of the policy other than those defenses named in the statute, viz., nonpayment of premiums and violation of the conditions of the policy relating to military or naval service in time of war.''

It will be noted that in the *Murphy* case the court, relying entirely upon the rule laid down in *Monahan v. Fidelity Mut. Life Ins. Co., supra,* held that there was no new contract of insurance entered into by reason of the reinstatement of the policy after its lapse. Although the question was presented in the *Murphy* case, the court did not decide therein the point made in the instant case that it is not the policy of insurance that is attacked, but that the defendant has a right after the limitation period for contesting the policy has expired, to contest for fraud the contract or agreement for reinstating the policy.

*Fendi v. Metropolitan Life Ins. Co., supra,* apparently approving *Murphy v. Old Colony Life Ins. Co., supra,* quoted the decision in that case practically in its entirety. The court did, however, hold in the *Fendi* case that the question of misrepresentations in an application for reinstatement was a question of fact for the jury.

Of the foregoing decisions neither the *Monahan* case nor the *Froehler* case are at all applicable to the question under consideration. As has been seen the conclusion reached in the *Murphy* case was based upon a misconstruction of the effect of the decision in the *Monahan* case and the *Fendi* case merely followed the *Murphy* case insofar as the question under discussion is concerned. Therefore, neither of these two latter decisions can be held to be helpful in the determination of the question before us.

In *Alper v. New York Life Ins. Co.,* 41 F. (2d) 956, where the situation presented was practically identical with that presented here, it was squarely and definitely held that an insurer had the right to attack the reinstatement of a policy of insurance which had lapsed for nonpayment of premium, where such reinstatement had been procured by the false and fraudulent misrepresentations of the insured in his applica-

tion for such reinstatement. In that case the court said at pp. 957 and 958:

"The plaintiff contends that, by its plea, the defendant is contesting the policy of insurance; that by virtue of the reinstatement of Alper a new contract of insurance was not effected, but the reinstatement merely operated to restore the existing policy in full force and vigor and in the same condition as it was immediately before default, particularly including the provision that the policy was to be incontestable two years from its date. If this position is sound, then the special plea is bad. On the other hand, defendant urges that the reinstatement was simply a contract to restore or revive the contract of insurance, and, like any other contract, may be attacked for fraud. If this position is sound, then the special plea is good.

"The plea proceeds upon the theory that the policy is good and valid. It makes no assault upon the policy. The plea contests the reinstatement. It challenges the validity of the reinstatement by reason of misrepresentation and fraud practiced on the company by Alper in his application for reinstatement.

"Alper failed to pay his premium at the stipulated time or within the grace period provided by the policy. His policy lapsed. The contract was at an end. Liability under it had wholly ceased. The policy could be revived only by consent of the defendant. By virtue of the terms of the original policy, a new written application was required, together with 'evidence of insurability satisfactory to the company,' before reinstatement could be made. A new contract was possible only as a result of new negotiations. *International Life Ins. Co. v. Mowbray,* (C. C. A.) 22 F. (2d) 952, 954.

"New negotiations were instituted. Alper's application for reinstatement constituted the offer. The action of the company in making the reinstatement was

the acceptance. Alper paid interest on the overdue premium which is the consideration. The transaction, therefore, has all the elements of a contract—offer, acceptance, and consideration.

"The new contract effected, as disclosed by this record, was a contract for the continuance in force of the policy originally issued. It was a contract for the revival or reinstatement of a precedent contract. *Wastun v. Lincoln National Life Insurance Co.* (C. C. A.) 12 F. (2d) 422, 425; *Keller v. North American Life Insurance Co.*, 301 Ill. 198, 211, 133 N. E. 726; *New York Life Insurance Co. v. Rosen*, 227 App. Div. 79, 236 N. Y. S. 659; *New York Life Insurance Co. v. Buchberg*, 249 Mich. 317, 228 N. W. 770, 771; *International Life Insurance Co. v. Mowbray* (C. C. A.) 22 F. (2d) 952, 954; *New York Life Insurance Co. v. Feicht* (D. C.) 29 F. (2d) 318.

"In the case of *New York Life Insurance Co. v. Buchberg, supra,* the court say: 'The reinstatement of a policy is not a new contract of insurance, nor is it the issuance of a policy of insurance; but rather it is a contract by virtue of which the policy already issued, under the conditions prescribed therein, is revived or restored after its lapse.'

"In essence, plaintiff must maintain two contracts. One is the contract of reinstatement. The other is the original policy as restored by the contract of reinstatement. The plea attacks the contract of reinstatement on the ground of fraud practiced by Alper. The incontestable clause is a part of the restored contract. It is no part of the contract for the restoration of the policy. The new contract for the reinstatement of the policy is subject to be attacked for fraud. *New York Life Insurance Co. v. Feicht, supra.*" To the same effect are (*Hartley v. Metropolitan Life Ins. Co., supra; Johnson v. Country Life Ins. Co., supra;* and *New York Life Ins. Co. v. Feicht, supra.*)

We think the foregoing cases are clearly applicable and sustain defendant's theory as alleged in its answer that, inasmuch as the insurer was induced to reinstate the policy of insurance as a result of the fraud of the insured, the policy was never in fact or law reinstated and that it necessarily follows that the situation is the same as if no contract for reinstatement was ever entered into and the policy, having lapsed for nonpayment of the premium due on April 1, 1939, was not in force and effect when the insured died on August 22, 1939.

It is stated repeatedly in plaintiff's brief that because defendant did not in its answer challenge the insured's statement in his application for reinstatement that he was in good health, it thereby admitted that the insured was in good health at the time the application for reinstatement was signed. In view of this alleged admission plaintiff asserts that the alleged ailments of insured and his consultations with physicians subsequent to the issuance of the policy and prior to his signing of the application for reinstatement were of a trivial and transitory nature and therefore not material as a matter of law. Plaintiff's position in this regard is not sound. We think the language used in *Perkins v. Prudential Ins. Co. of America*, 69 F. (2d) 218, is appropriate and a sufficient answer to plaintiff's contention in this regard. There the insured stated in his application for reinstatement not only that he was in good health but that since the date of the issuance of the policy he had had no illness or injury and had not received any medical treatment at his home or at a hospital. After his death it was disclosed that he had had a metabolism test at a hospital, which showed that he had a toxic goitre. It appeared that he was not informed as to the significance of his condition. It was contended there, as it is here, that the insured could not have been guilty of fraud since he was not bound to disclose minor ailments,

which he considered would have no bearing on the risk. In that case the court used this language at pp. 220 and 221:

"The application asks certain specific questions as to whether or not the insured is in good health, whether he has had any illness or injury since the policy was issued, and whether he has had any medical or surgical treatment. It does not qualify these questions with reference to the seriousness of conditions for which the insured may have been under medical or surgical care. . . . The first question referred to here might well be considered as calling for an answer as to insured's own idea of his state of health, but the second and third are in a different category. The insurer has a right to know whether the insured has had occasion to consult a physician for any reason whatsoever, and to find out for itself whether or not the risk has been impaired since it first issued the policy. . . . The policy provided that reinstatement after lapse was to be on condition that the insured furnish evidence of insurability satisfactory to the insurer. The insurer had a right to question any physicians consulted by the insured since the policy was issued in order to determine for itself whether it still wished to carry the risk."

Plaintiff's contention that "the answer to question No. 6 was not responsive and was therefore, waived by the reinstatement of the policy," is without merit. The insured answer "No" to the question "What physicians, practitioners or surgeons have you consulted since examined for the above mentioned policy? (Why?)." His answer reasonably construed could only have been intended to mean that he had not consulted any physician or surgeon since he was examined prior to the issuance of his policy.

We are impelled to hold that defendant's answer alleged a good and sufficient defense and that the trial court erred in sustaining plaintiff's motion to strike

that portion of said answer which asserted the affirmative defense of the insurance company.

For the reasons stated herein the judgment of the superior court is reversed and the cause is remanded with directions that the order sustaining plaintiff's motion to strike that portion of defendant's answer which asserted its affirmative defense be vacated; that plaintiff be required to reply to defendant's answer and that such other proceedings be had as are not inconsistent with the views herein expressed.

*Judgment reversed and cause remanded with directions.*

FRIEND, P. J., and SCANLAN, J., concur.