## COHEN v. NEW YORK LIFE INS. CO.

### No. 8022.

Circuit Court of Appeals, Seventh Circuit.

Dec. 17, 1942.

Ferdinand H. Pease, of New York City, Wendell J. Brown, Bruce M. Smith, and Joseph W. Townsend, all of Chicago, Ill., for appellant.

Robert L. Prendergast, James B. McKeon, James C. Rich, and Lawrence J. Miller, all of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

The New York Life Insurance Company appeals from a judgment entered on the pleadings on motion of appellee who thereby admitted the following facts contained in appellant's answer to appellee's bill of complaint.

The policies on which suit was filed by the beneficiary named therein were issued to Max Cohen, then fifty-three years of age, on March 17, 1928. Except for a difference in the face amounts, one being for $5,000 and the other for $3,000, the two policies were identical. The incontestable clause provided for a two-year period, and both policies contained the following provision for reinstatement: "This Policy may be reinstated at any time within five years after any default, upon written application by the Insured and presentation at the Home Office of evidence of insurability satisfactory to the Company and upon payment of overdue premiums with five per cent interest thereon from their due date. * * *"

Both policies lapsed for nonpayment of quarterly premiums due on September 17, 1940. At that time there were substantial loans outstanding against the policies, amounting to $1,699.92 and $1,019.95 respectively. On December 13, 1940, a written application for reinstatement of the two policies was mailed in to appellant, together with money orders to cover the premiums due. The insured answered the question whether he was in the same condition of health as when the policies issued, in the affirmative, and the question whether within the past two years he had had any illnesses, diseases or bodily injuries or had consulted or been examined by any physicians, in the negative. He certified that the answers were full, complete and true and agreed that the Company believing them to be true should rely and act thereon. The Company, relying on the answers contained in the application for reinstatement, made no independent examination of the insured, but instead accepted his offer

of reinstatement on December 16, 1940. Cohen died on December 18, and, after receipt of proofs of death, appellant learned for the first time that he had been in a hospital from December 9, until his death, and that on December 11, he had been examined by a physician who found that he was suffering from some ailment evidenced by complaint of severe pressure in the heart or precardial area, shortness of breath, enlarged prostate, and other disabilities. His condition did not improve, and he remained in the hospital until his death on December 18.

It is obvious from the foregoing facts, admitted by appellee's motion for judgment, that the reinstatement was brought about by fraud. The basis for the motion, however, was that the policies were incontestable by reason of the clause providing for incontestability after two years from the date of their issue. In entering judgment on the motion, the District Court stated:

"While the decisions of the Supreme and Appellate Courts of Illinois are not entirely harmonious, yet the great weight of the decisions is in favor of the contention of the plaintiff. Murphy v. Old Colony Life Ins. Co., 219 Ill.App. 649 (certiorari denied 219 Ill.App. XIII); Fendi v. Metropolitan Life Ins. Co., 294 Ill.App. 606, [13 N.E.2d 861]; Dorval v. Guarantee Trust Life Ins. Co., 308 Ill.App. 323, [31 N.E.2d 385]; with some help from the cases of Monahan v. Fidelity Mut. Life Ins. Co., 242 Ill. 488 [90 N.E. 213, 134 Am.St.Rep. 337]; and Froehler v. North American Life Ins. Co., 374 Ill. 17 [27 N.E.2d 833].

"The case of McMahon v. Continental Assurance Co., 308 Ill.App. 27 [30 N.E.2d 959], is against plaintiff's contention. Subsequently, however, to the McMahon case, the Dorval, supra, not reported but the text of which has been furnished to the Court, was decided."

Appellant contends that the three Illinois Appellate Court cases relied upon, which admittedly support the judgment of the District Court, were based on a misconception of an earlier Illinois Supreme Court case, and that while there is no Supreme Court case squarely in point, neither is there any holding by that court contrary to appellant's contention that intentional and material fraud in the reinstatement application vitiates the transaction and leaves the policy and its provisions unrestored and that in the absence of a valid reinstatement, there can be no occasion to construe or apply the incontestable clause to a policy which stands lapsed for non-payment of premium.

The first of the two Supreme Court cases to which the District Court referred as lending some assistance to appellee, Monahan v. Fidelity Mut. Life Ins. Co., 242 Ill. 488, 90 N.E. 213, 214, 134 Am.St.Rep. 337, involved a suit on a policy issued as of September 30, 1903, and which apparently contained no provision for a period of grace for payment of premiums. The premium due on September 30, 1904, was not paid on that day, but was paid on the following day, October 1, 1904. It does not appear that any application for reinstatement was required, and no question was raised as to fraud in the reinstatement. However, the policy did contain the following incontestable clause: "If this policy shall have been in continuous force after two years from the date hereof, it shall, in the event of the death of the insured, be incontestable for the sum payable hereunder except for non-payment of premium." The insured died on October 19, 1905. On suit on the policy, the insurer contended that the policy became forfeited for nonpayment of the premium due September 30, 1904, hence that it had not remained in continuous force for two years after issue, and that it could, therefore, defend on the ground of fraud in the original application. The court, however, held that the policy had not been forfeited, hence it had remained in force two years from its date, quoting from an earlier Illinois case, Illinois Life Ass'n v. Wells, 200 Ill. 445, 65 N.E. 1072, 1075: "If payment was actually made, even though not according to the terms of the policy, the company could certainly not thereafter insist upon a forfeiture for a failure to pay promptly." While the court did, it is true, quote with approval the language of the Iowa court in Goodwin v. Provident Sav. Life Ass'n, 97 Iowa 226, 66 N.W. 157, 32 L.R.A. 473, 59 Am.St.Rep. 411, to the effect that reinstatement effected a cancellation of a forfeiture, restoring the original policy and all its terms, which language was relied upon by later courts in Illinois, we think it is significant that the court had previously stated that there was no forfeiture because of the waiver by acceptance of the premium a day late.

The second Supreme Court case referred to by the District Court, Froehler v. North American Life Ins. Co., 374 Ill. 17, 27 N.E. 2d 833, involved a suit on a policy issued

April 1, 1932, and lapsed for nonpayment of premium on May 1, 1933. May 4, 1933, the insured made application for reinstatement, stating that he was then in good health, and paying the past due premium. A week or so after this application, he consulted a physician, complaining of headaches, some weakness, some difficulty with his vision and occasional nausea. As the result of a further examination some time between May 12 and 15, the insured on May 17, received a diagnosis of brain tumor, for which he was operated on on May 19, on which date he died.

In reversing the judgment of the Appellate Court, 300 Ill.App. 611, 21 N.E.2d 796, which had affirmed a lower court judgment in favor of the insurer, the court did not directly discuss the question of the effect of the incontestability clause upon the reinstated policy, but discussed the questions involved in the light of the theory upon which the case had been tried as indicated by instructions given to the jury at the request of the insurer. The issues as indicated by those instructions were, first, whether the insured acted in good faith when he stated in his application for reinstatement that he was then in good health, and second, whether the company acted with reasonable celerity in passing upon that application. The court denied the applicability of a case relied upon by the insurer (Western & So. Life Ins. Co. v. Tomasun, 358 Ill. 496, 193 N.E. 451), distinguishing it on two grounds, first that it involved an absolute and intentional fraud, and second because there, no contract ever existed between the parties (it involved an original application for insurance), while in the Froehler case, they were dealing with the performance of an existing contract. Citing the Monahan case, the court held that the reinstatement when effected merely cancelled the forfeiture, leaving the original contract in full force.

Commenting that the truth or falsity of the statements as to health were to be determined as of the date the certificate was made, and that such statements could not be construed to mean that the insured had had no temporary or trivial indisposition, the court was convinced that the situation was no different than if the insured had been struck by lightning or hit by a truck on May 15, 17, or 19. The court did, it is true, call attention to the fact that in the original policy the insured had bought and paid for a right to be reinstated after de-

fault, upon furnishing evidence of insurability satisfactory to the company. We think it did not mean by that that the insured could deliberately falsify that evidence and then, after inducing the reinstatement by the misrepresentation, prevent the insurer from setting up the defense of fraud.

Determining the truth or falsity of the statements as of the date they were made, as the Illinois court said should be done, it is clear in the case at bar, that they were false, and that the insured, or whoever acted in his behalf, knew they were false. We have here no question of good faith or of temporary or trivial indisposition. By her answer, appellee admitted the facts from which no reasonable person could infer anything but misrepresentation for the purpose of inducing the company to act as it did act in reliance upon the false statements without independent investigation of the facts. We are convinced that the Illinois court, by its decision in the Froehler case, did not intend to hold that an insurer, by accepting an application under facts such as are here present, was precluded from setting up the defense of fraud in the reinstatement in order to avoid the reinstatement and, so to speak, restore the forfeiture.

█ The District Court, in upholding appellee's contention of the efficacy of the incontestable clause to bar the defense of fraud, relied not only upon "some help from" the two Supreme Court cases, but directly upon three Appellate Court cases which it said constituted the weight of authority. The Supreme Court denied certiorari as to two of these cases, and it therefore becomes necessary for us to determine whether, by so doing, that court approved the theory upon which the District Court based its judgment. It must be remembered always that denial of certiorari by the Supreme Court imports nothing more than an approval of the conclusion reached by the lower court and is not to be construed as an approval of the reasons assigned by that lower court in reaching its conclusion. Graham v. White-Phillips Co., 296 U.S. 27, 56 S.Ct. 21, 80 L.Ed. 20, 102 A.L.R. 24; People v. Grant, 283 Ill. 391, 119 N.E. 344. As cogently stated by a Judge of the Appellate Court for the First District of Illinois, "Some twenty years ago the writer was of opinion that where the Supreme Court denied certiorari (which is now similar to our leave to appeal), and

the question involved was necessarily a question of law, the denial of the writ by the Supreme Court was equivalent to holding that the question of law had been decided properly by this court. * * * This view was wrong." People v. Wilmette, 294 Ill.App. 362, 13 N.E.2d 990, 992.

Few facts were given in the unpublished opinion of the Appellate Court in the Murphy case, 219 Ill.App. 649, denial of certiorari in which appellee relies upon. We know only that the policy there involved was issued in 1909; that it contained a two-year incontestable clause; that default and reinstatement occurred in July 1915; that the insured died in December 1916; that suit was brought in June 1917 and that the insurer elected to stand upon its affidavit of merits setting up the defense of fraud in the reinstatement; and that the Appellate Court relied upon the Monahan case, supra, as authority for its ruling that the reinstatement merely canceled the forfeiture and that the original policy continued in effect, rejecting the rulings of courts of other states that the insurer could rely upon the defense of fraud until expiration of the contestable period as applied to the reinstated policy.

The facts in the Fendi case (294 Ill.App. 606, 13 N.E.2d 861, also unpublished) are of the same type as those of the Froehler case, with judgment entered on the verdict of a jury to which was presented the question of whether or not the insured had acted in good faith in signing his application for reinstatement.

In the Dorval case (308 Ill.App. 323, 31 N.E.2d 385, also unpublished certiorari denied), the insurer sought unsuccessfully to set up the defense of fraud over a year after the reinstatement of a policy containing a one-year incontestable clause.

The other case to which the District Court referred as opposed to appellee's contention, McMahon v. Continental Assur. Co., 308 Ill.App. 27, 30 N.E.2d 959, fully considered the authorities above discussed, in a very well-reasoned opinion, and reached the conclusion that the Monahan and Froehler cases were not applicable to the question of fraud in the reinstatement,

and that the Murphy and Fendi cases were not binding authority. The Appellate Court then directed that an order sustaining the plaintiff's motion to strike the insurer's answer setting up the affirmative defense of fraud in the reinstatement be vacated.

Two other Appellate Court cases, to which appellant calls our attention, support the view that an insurer is not prevented by the incontestable clause from setting up the defense of fraud in the reinstatement, and that the question to be determined is whether the insured knowingly made fraudulent answers to induce reinstatement. See Johnson v. Country Life Ins. Co., 284 Ill.App. 603, 1 N.E.2d 779; Hartley v. Metropolitan Life Ins. Co., 286 Ill.App. 605, 3 N.E.2d 288 (abstract).

■■■ It is clear that Appellate Court cases relating to the issues here presented are completely out of harmony. We do not agree with the conclusion of the District Court that the great weight of the decisions is in favor of the contentions of appellee. Nor, considering the very limited effect of denial of certiorari, which may be for defect in procedure, do we think that by such denial in the Murphy and Dorval cases, the Supreme Court has approved their rulings to the extent of holding that an insurer may never set up the defense of fraud in the reinstatement of a policy. On the contrary, in view of the language of the Froehler case, discussed above, we are convinced that it has expressly ruled that the question of good faith is to be determined as of the date of application for reinstatement. This can only mean that an insurer may, by proving fraud in the inducement, avoid the reinstatement of a policy even though a similar defense against fraud in the original contract would be precluded by expiration of the contestable period. Hence we are convinced that the defense of fraud was available to appellant here, and that the District Court erred in entering judgment for appellee on the pleadings.

Reversed and remanded for further proceedings in harmony with this opinion.