CATHERINE E. BECK, Plaintiff-Appellee, *v.* CAPITOL LIFE INSURANCE COMPANY, Defendant-Appellant.

Fifth District    No. 76-178

Opinion filed May 10, 1977.

938

JONES, J., dissenting.

Steven N. Mottaz, of Thomas, Mottaz and Eastman, of Alton, for appellant.

Lola Maddox, of Wiseman, Shaikewitz, McGivern amd Wahl, of Alton, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

This action was brought to recover under a life insurance policy which had lapsed and was reinstated shortly before the insured's death. In a bench trial in the circuit court of Madison County, the court entered judgment for the plaintiff in the amount of $9620 as to count I of the complaint which alleged general liability under the contract of insurance. At the close of plaintiff's case, the court granted defendant's motion for a directed verdict as to count II of the complaint, which alleged fraudulent misrepresentations on the part of defendant's agent. Both parties have appealed.

The facts of the case are as follows: The decedent, Clarence Beck, was insured by the defendant under a life insurance policy for $9620. The insured did not make the quarterly premium payment due in March of 1971, and one month later the policy was cancelled for nonpayment. The decedent sought to reinstate the policy in an application dated May 12, 1971. Contained in the reinstatement application was the following provision:

> "IT IS HEREBY DECLARED: that all such persons are now in good health and free from any symptom of disease; and that within the past five years * * * they (1) have had no illness, injury or disease, (2) have not consulted or been treated by any physician or practitioner, or been confined in any hospital or institution * * * except:"

A box provided on the application indicating "no exceptions" was checked, and the space to provide details or explanations was left blank. Based on the application for reinstatement and the payment of the overdue premium, the policy was reinstated on June 4, 1971.

However, at the time of the application for reinstatement of the policy the decedent was in poor health. He had recently missed work due to congestion, a slight cough, and swelling of the ankles. On May 8, 1971, the decedent had seen a doctor who prescribed medication to relieve the swelling in the legs and shortness of breath. On May 15, 1971, he was hospitalized and as a result of tests, found to have been suffering from congestive heart disease and mild diabetes. The decedent was later released from the hospital and was under a doctor's care until his death on June 16, 1971, from a heart attack.

Plaintiff, decedent's wife and beneficiary under the life insurance

policy, instituted this suit to recover the benefits under the policy. Defendant has maintained that it is excused from payment due to the insured's misstatement concerning his good health.

The only factual dispute in this case centers around the reinstatement application. Defendant's agent testified that after the Becks received the reinstatement offer, he received a call from Mrs. Beck concerning the reinstatement application. The agent stated that he told Mrs. Beck how to complete the application, including the medical information, and that she delivered the form to his home, signed by her husband but otherwise blank. He then completed the application in accordance with the information given him by Mrs. Beck that there were no changes in Mr. Beck's health.

On the contrary, Mrs. Beck testified she went to the agent's office on May 12, 1971, to pay the past due premium, but the agent did not have the application ready. She further testified that he brought a completed application to her home the following afternoon in order to obtain the signature of Mr. Beck. According to Mrs. Beck, the agent made no inquiries about Mr. Beck's health on either occasion.

It is obvious from the testimony of Mr. Beck's doctor that the deceased was not in good health at the time the application was submitted to the defendant. The statement in the application to the contrary was wholly false. Additionally, it is undisputed that this misrepresentation was material to the risk. The only remaining question, therefore, is which of the parties before the court must bear the responsibility of this material misrepresentation.

■■ We cannot say that the judgment of the trial court in favor of plaintiff as to count I of her complaint was in error. The trial court was faced with two contradictory versions of the facts leading to the misrepresentation, and having the advantage of observation of both the direct and cross-examination testimony of these witnesses, accepted the plaintiff's testimony as true. Having carefully reviewed the record in this case, we cannot say that this finding of fact was against the manifest weight of the evidence, and therefore we decline to substitute our judgment for that of the trial court. *Stilwell v. Continental Illinois National Bank & Trust Co.*, 31 Ill. 2d 546, 202 N.E.2d 477.

Defendant insurer contends further, however, that even if the misrepresentation as to the deceased's health was made by its agent, and not the decedent, the policy is voidable because the deceased, in signing the application for reinstatement, was bound by its contents and representations as his own. We cannot agree.

■■ We believe that where an agent of the insurer completes an application for insurance without propounding the questions therein to the insured, in the absence of collusion with the insured, the insurer is

estopped from asserting any misrepresentations as a defense in an action for payment under the policy. This position finds support from several authorities on insurance law. For example, in Appleman's Insurance it is stated:

> " * * * an insurer waives or is estopped to rely on representations contained in an application where the agent fills in the application without propounding any of the questions to the insured. Where an agent assumes the responsibility for answering the questions asked in the application, and answers falsely or incorrectly without the applicant having made any statements in connection therewith or knowing the manner in which they were answered, the insurer will be estopped to claim that the representations were false or incorrect." (17 Appleman, Insurance, § 9401, at 7—8 (1945).)

In accord is Couch's Cyclopedia of Insurance Law, where the author states:

> " * * * When an agent, acting within the scope of his authority, undertakes to fill out * * * an application for a policy, * * * in consequence of which, * * * if such an agent, by reason of mistake, neglect, omission, fraud or otherwise, inserts erroneous answers in the application, such representations bind the insurer, but are not binding upon the insured, provided he is justifiably ignorant thereof * * *." 2 Couch, Cyclopedia of Insurance Law §524, at 1528.

Additionally, it has been held by Illinois courts that when an agent fills out an application for insurance without inquiry, merely presenting the application to the insured for his signature, the answers to the questions in the application will not be warranties. (*Flenner v. Capital Live Stock Insurance Co.*, 217 Ill. App. 529.) Therefore, the company may be estopped to question a misdescription inserted in the application by the agent, without any suggestion from the insured. *Storment v. Hartford Fire Insurance Co.*, 215 Ill. App. 287.

> "It was his [agent's] duty to ascertain the actual facts about this risk, and his report to the company must, where no fraud or intent to deceive on the part of the applicant is shown, be conclusive upon it." *Royal Neighbors of America v. Boman*, 177 Ill. 27, 32.

■■ Since we accept the trial court's determination that the agent, and not the insured, was responsible for the misrepresentation in the application for reinstatement, whether this misrepresentation was caused by mistake, negligence, or carelessness on the part of the agent is irrelevant. It is enough for our purposes that it was a representation made by the agent, without the knowledge of the insured, and therefore cannot be relied upon by the defendant to avoid payment of the policy benefits.

To allow the defendant insurer to repudiate the contract on the ground of its own agent's unskillfulness would be decidedly unjust and contrary to public policy. This litigation would have never arisen had the defendant's agent followed the simple expediency of having the insured supply and record answers as to his health before signing the application. Since the answers appearing on the application were supplied by the agent rather than the insured, it follows that responsibility for the misrepresentation must lie with the defendant insurance company.

■■■ Defendant alternatively argues that plaintiff did not plead the issue of waiver or estoppel in her complaint. Count I of the complaint is based on the contract of insurance, while count II alleges fraud on the part of the agent in the procurement of the application for reinstatement. Defendant made no objection to the introduction of evidence by the plaintiff which tended to prove that it was estopped to rely on the misrepresentation in the application. In fact, defendant introduced evidence to refute estoppel through the testimony of its agent that the insured and not the agent had made the misrepresentation. Section 43(4) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 43(4)) requires that estoppel be clearly pleaded in order to avoid the likelihood of taking the opposing party by surprise.

In this case defendant was clearly not taken by surprise as to plaintiff's theory of the case, that is, that defendant's agent's conduct was improper and therefore that the defendant was estopped from enforcing forfeiture of the policy benefits. Additionally, where a party introduces or brings out evidence bearing on issues not presented by the pleadings, or fails to object to evidence offered by the adverse party, an objection that a certain matter is not in issue under the pleadings is waived. *McKinney v. Nathan,* 1 Ill. App. 2d 536, 117 N.E. 2d 886; *Head v. Wood,* 20 Ill. App. 2d 97, 155 N.E.2d 348.

In her cross appeal plaintiff questions the action of the trial court in granting defendant's motion for directed verdict as to Count II of her complaint. That count, which was based on fraud by the defendant's agent, alleged that the agent falsely represented to the Becks that upon completion of the reinstatement application and payment of overdue premiums, the policy would be reinstated.

■■ We agree with the trial court that there was no proof of fraud in this case. The elements of common law fraud in Illinois are false representations as to material matters, known to be false by the defendant, made with the intent to deceive the plaintiff, and reasonably relied upon by the plaintiff to his injury. (*Wright v. Peabody Coal Co.,* 290 Ill. App. 110, 8 N.E.2d 68; *Skidmore v. Johnson,* 334 Ill. App. 347, 79 N.E.2d 762.) At most, plaintiff's evidence established only negligence on

the part of defendant's agent, and therefore was insufficient to prove fraud.

For the foregoing reasons, we affirm the judgment of the circuit court of Madison County.

Affirmed.

CARTER, P. J., concurs.

Mr. JUSTICE JONES, dissenting:

I respectfully dissent.

I agree with the majority that the trial court was presented with two contradictory versions of the facts leading to the misrepresentation contained in the reinstatement application that the deceased's health was good and that he had not consulted or been treated by any physicians in the five years previous to the execution of the application. I also agree that it is undisputed that this misrepresentation was material to the company's acceptance of the risk. (See *Weinstein v. Metropolitan Life Insurance Co.,* 389 Ill. 571, 60 N.E.2d 207.) However, I cannot agree with their conclusion that the trial court's finding of fact that Mrs. Beck's version was the true one was not clearly erroneous. My examination of the record convinces me that the trial court's decision is contrary to the manifest weight of the evidence. *State Farm Mutual Automobile Insurance Co. v. Hanson,* 7 Ill. App. 3d 678, 288 N.E.2d 523.

Agent John Brakeville basically testified that he received a call from Mrs. Beck concerning information she had received relative to reinstating the lapsed life policy of deceased. He told her how to complete the application, including the medical portion. She subsequently brought a signed application for reinstatement to his home, and he completed the form in accordance with Mrs. Beck's representation that there were no changes in Mr. Beck's health. I believe that this version was strongly corroborated by defendant's exhibit one. That exhibit was a letter from the company, dated May 7, 1971, that was sent to Mr. Beck at the address where, according to Mrs. Beck's testimony, they resided at such time informing him that his policy had lapsed and that it could be reinstated by sending the company his premium check and a completed application. The letter shows that an application was enclosed. This exhibit lends credence to Agent Brakeville's testimony that Mrs. Beck called in response to information she received concerning reinstating the policy and that she brought a signed application to him on or about May 12, 1975. Mrs. Beck testified only that she could not recall receiving the May 7 letter and application. I believe that the trial court clearly erred in

discounting the support of the agent's version supplied by this exhibit. In addition, Mrs. Beck's testimony that Agent Brakeville could not have the application ready on May 12, 1971, when she paid the premium at his office seems improbable when one notes the minimal amount of items which must be recorded thereon: policy number; name of insured; amount paid with application; date and location; exceptions to the medical proviso or checking of "no exceptions" box.

However, irrespective of whose version is believed concerning how the medical section came to be filled out by checking the "no exceptions" box, I am of the opinion that the trial court and the majority of this court are incorrect in holding for the plaintiff. In the last analysis, the application is that of the insured-applicant and the representations contained therein are adopted by him. He should be charged with knowledge of the contents of the application. It is undisputed that both the decedent and Mrs. Beck had an adequate opportunity to examine the application. They also were aware of Mr. Beck's recent medical problems which were clearly relevant to his insurability. No proof of fraud is necessary to avoid the contract. It is well settled that in an equitable action for the cancellation of an insurance policy upon the ground that misrepresentations had been made as to facts material to the risk, it is not essential that the applicant should have wilfully made such misrepresentations knowing them to be false. They will avoid the policy if they are, in fact, false and material to the risk even though made through mistake or in good faith. (*Western & Southern Life Insurance Co. v. Tomasun*, 358 Ill. 496; *McMahon v. Continental Assurance Co.*, 308 Ill. App. 27, 30 N.E.2d 959. See also *Alperin v. National Home Life Assurance Co.*, 32 Ill. App. 3d 261, 336 N.E.2d 365; *Campbell v. Prudential Insurance Co. of America*, 15 Ill. 2d 308, 155 N.E.2d 9.) No matter which state of facts is believed, this rule, in my opinion, controls the case.

For the foregoing reasons, I would have reversed the trial court's judgment and instructed the court to enter an order dismissing the complaint.